UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

JOAN GRANT BOYD, RANDA JONES, HUMBERTO     :
MENESES, SYBIL TAYLOR, and TONYA WARTERS,          Case No. 05-2455
on behalf of themselves and all others similarly situated,   :     (KAM/RER)

              Plaintiffs,                              :

        -- against --                                    :

J.E. ROBERT CO., INC; JER REVENUE SERVICES,     :
LLC; NYCTL 1996-1 TRUST; NYCTL 1997-1 TRUST;
NYCTL 1998-1 TRUST; NYCTL 1999-1 TRUST,           :

           Defendants.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS'
### MOTIONS TO DISMISS

Respectfully submitted,

Mark S. Kaufman (MK 2006)
Kaufman & Kahn, LLP
747 Third Avenue, 32nd Floor
New York, NY  10017
Tel.: (212) 293-5556
Email:  kaufman@kaufmankahn.com

Paul Grobman (PG 1876)
555 Fifth Avenue, 17th Floor
New York, NY 10017
(212) 983-5880
Email:  grobtown@aol.com

Curtis V. Trinko (CT 1838)
16 West 46th Street, 7th Floor
New York, NY 10036
(212) 490-9550
Email:  ctrinko@trinko.com

*Co-Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

   A.   Tanja Warters.............................................................................................. 3

   B.   Sybil Taylor ................................................................................................ 5

   C.   Defendant's Concealment of the Facts Relating to Improper Fees ........... 7

ARGUMENT ........................................................................................................ 9

   POINT I.  WARTERS' AND TAYLORS' FDCPA CLAIMS ARE SUBJECT TO
   EQUITABLE TOLLING................................................................................. 9

     A.   Plaintiff Warters and Taylor Were "Justifiably Ignorant" of Their FDCPA
     Claims Until November 2004, At the Earliest .......................................... 12

     B.   Warters and Taylor Were Not on Inquiry Notice of Their Claims .................. 14

     C.   Defendants' Concealment of Critical Facts Regarding Plaintiffs' Claims
     Warrants Equitable Tolling...................................................................... 20

     D.   Warters' and Taylor's Attempt to Intervene in the Binson Action Supports
     Equitable Tolling as of February 15, 2005 ............................................... 21

   POINT II.  EVEN IF WARTERS' AND TAYLOR'S FDCPA CLAIMS WERE
   DISMISSED, THE COURT HAS ALREADY RULED THAT SUPPLEMENTARY
   JURISDICTION OVER THEIR STATE LAW CLAIMS IS APPROPRIATE.......... 24

   POINT III.  PLAINTIFFS HAVE ADEQUATELY ALLEGED A CLAIM UNDER
   §349 OF THE GENERAL BUSINESS LAW ............................................... 27

   POINT IV.  PLAINTIFFS HAVE ADEQUATELY ALLEGED A CLAIM AGAINST
   THE TRUSTS UNDER N.Y. GENERAL OBLIGATIONS LAW §5-501 ............. 28

CONCLUSION.................................................................................................. 30

## INTRODUCTION

The plaintiffs' federal and state claims in this proceeding allege that the NYCTL 1996-1 Trust, NYCTL 1997-1 Trust, 1998-1 Trust and 1999-1 Trust (the "Trusts") and J.E. Robert Co., Inc. and JER Revenue Services, LLC (together, "JER") have systematically charged thousands of delinquent New York City taxpayers for attorneys' fees and expenses in situations where they have no contractual or statutory right to do so. In his Order dated September 24, 2008 (the "9/24/08 Order"), denying in part defendants' prior motions to dismiss in this action (the "Prior Motions"), Judge Bianco denied the 1998-1 Trust's attempt to dismiss the federal and state law claims against plaintiffs Joan Grant Boyd, Randa Jones, and Humberto Meneses.  See Kaufman Declaration dated May 22, 2009 ("Kaufman"), Ex. A (9/24/08 Order) and Ex. B (Report and Recommendations of Magistrate Judge Pollack dated March 18, 2008, to which the 9/24/08 Order refers).

Furthermore, while Judge Bianco found that the Fair Debt Collection Practices Act ("FDCPA") claims raised by plaintiffs Tanja Warters[1] and Sybil Taylor against the 1996-1, 1997-1, 1998-1 and 1999-1 Trusts were barred by the one-year statute of limitations, the Court gave plaintiffs Warters and Taylor the right to amend their Complaint to allege facts supporting the application of equitable tolling, as set forth in plaintiffs' opposition to the Prior Motions.   Moreover, irrespective of whether Warter's and plaintiff Taylor's FDCPA claims ultimately survived, the Court held that it was proper to exercise jurisdiction over plaintiffs Warters' and Taylor's state law claims against the Trusts and JER, because they arose from the same operative facts as the claims brought by plaintiffs Boyd, Jones and Meneses.  See Kaufman Ex. A at 6.

---

[1] Tanja Warters was erroneously named "Tonya Warters" in the caption of this case. Plaintiffs' counsel intends to amend the caption accordingly.

In accordance with Judge Bianco's directive, plaintiffs Warters and Taylor filed a Second Amended Complaint which alleges specific facts supporting their assertion that the FDCPA statute of limitations should be equitably tolled.  In response to the Second Amended Complaint, the defendant Trusts and JER have filed these second motions to dismiss.  These motions not only challenge plaintiff Warters' and plaintiff Taylor's FDCPA claims on statute of limitations grounds, but also seek to re-litigate issues which were expressly resolved in the Prior Motions, or upon grounds which defendants could have, but neglected to, raise in the Prior Motions.

As shown below, plaintiffs Warters and Taylor have alleged ample basis for applying equitable tolling to the one-year statute of limitations on their FDCPA claims. No publicly available information could have alerted plaintiffs Warters and Taylor to the fact that the Trusts – quasi-governmental entities in which the City of New York has an interest – were systematically charging delinquent taxpayers for attorneys' fees which they had no right to pass on.  Indeed, the facts in the record indicate that, to this day, the defendants continue to refuse to disclose whether the 1996-1, 1997-1 and 1999-1 Trusts attempted to charge a purported "debt cancellation fee" or "discontinuance fee" for legal services to plaintiffs Warters and Taylor, and have systematically destroyed documents relating to the assessment of such fees.

Moreover, irrespective of the Court's ultimate determination with regard to the timeliness of  Warter's and plaintiff Taylor's FDCPA claims, the Court should not counteneance defendants' attempt to re-litigate the previously-decided question of whether the Court may exercise supplementary jurisdiction over plaintiffs Warters' and Taylors' state law claims.  Further, the defendants possess no right to continue to raise

arguments concerning the merits of those state law claims, when such arguments were, or should have been, raised in the Prior Motions.

## BACKGROUND

Like the other named plaintiffs in this action, plaintiffs Warters and Taylor are New York City residents who fell behind on their property tax payments owed to New York City ("NYC"), as well as their water and sewer charges owed to NYC agencies.

### A.     Tanja Warters

As a result of the foregoing, in May 1997, NYC attached a lien for certain outstanding taxes and water and sewer charges against Warters' home which was assigned to the 1997-1 Trust.  See Kaufman Ex. C (Second Amended Complaint), ¶¶ 116-17.  In March 2001, NYC attached a second lien for unpaid taxes and sewer charges on Warters' home which was assigned to the 1998-1 Trust.  Kaufman Ex. C, ¶ 118. Thereafter, foreclosure actions were commenced by the Trusts and JER on Warters' home.  Kaufman Ex. C, ¶ 120.

In May 2004, plaintiff Warters sought to pay off the liens assigned to the 1997-1 and 1998-1 Trusts, and requested Payoff Quotes from the Trusts through JER.  Kaufman Ex. C, ¶¶ 121-22.   Payoff quotes listing purported attorneys' fees and expenses were subsequently provided to plaintiff Warters which purportedly showed the amounts of principal, attorneys' fees and expenses purportedly due and owing.  Kaufman Ex. C, ¶¶ 123.

The Amended Complaint alleges that, upon information and belief, the defendants hid a "Debt Cancellation Fee" for purported legal services within entries for attorneys' fee Warters' purportedly owed to the 1997-1 and 1998-1 Trust. Kaufman Ex. C, ¶¶ 123-

24.   According to the Complaint, defendants "concealed the fact that a Debt Cancellation or [Debt] Discontinuance Fee was charged to plaintiff Warters' account. Plaintiff Warters did not learn of this wrongful concealment until later."  Kaufman Ex. C, ¶ 126.

On May 19, 2004, plaintiff Warters paid off the aforesaid tax liens by selling her home.  Kaufman Ex. C, ¶¶ 127-28.   On September 10, 2004 – within one year of the filing of this action -- JER and the Trusts mailed a refund check to plaintiff Warters for $5,259.86 based on a purported overcharge and overpayment of the amount actually owed on the liens.  Kaufman Ex. C, ¶ 134.

The Amended Complaint states that plaintiff Warters did not learn that she had been charged for a so-called Debt Cancellation Fee by the 1998-1 Trust until sometime after November 2004, when the 1998-1 Trust first disclosed that it had assessed a "Debt Cancellation Fee" to her account in connection with the lawsuit entitled Binson v. J.E. Robert Co., Inc., et al. (E.D.N.Y.CV 03-3562 (JG /CLP) (the "Binson action").  Thus, the Amended Complaint alleges:

> 137. At the time of the Binson Complaint, plaintiff Warters did not know that she had been charged something called a "Debt Cancellation Fee", nor did she know that she had been charged attorneys' fees for work which had never been performed.
>
> 138. Indeed, November 12, 2004, when JER provided discovery in the Binson action about instances in which the 1998-1 Trust charged for so-called "Debt Cancellation Fees", was the first time that JER and the 1998-1 Trust disclosed to plaintiff Warters or to her counsel that a "Debt Cancellation Fee" had been assessed by JER and the 1998-1 Trust against plaintiff Warters' account.
>
> 139. During depositions in the Binson action on March 24, 2005 and May 3, 2005, JER and the 1998-1 Trust for the first time disclosed that the so-called "Debt Cancellation Fee" charged

> plaintiff Warters on May 19, 2004 was for purported "legal services."

> 140. Such alleged "legal services" had not yet even been rendered as of May 19, 2004.

Kaufman Ex. C, ¶¶ 137-40.

As plaintiff Warters further alleged, at the time the Second Amended Complaint was filed in November 2008, the 1997-1 Trust still had not disclosed whether plaintiff Warters was charged for a purported Debt Cancellation Fee:

> 141. To this day, the 1997-1 Trust has failed to disclose whether it charged plaintiff Warters for a so-called Debt Cancellation Fee, or for legal fees for legal services which had not yet been performed, or for any legal fees and costs which the 1997-1 Trust allegedly was entitled to collect.

> 142. In sum, plaintiff Warters' claims against the 1997-1 and 1998-1 Trusts depended on information held internally by the Trusts that was otherwise unavailable to plaintiff Warters, which information the Trusts did not disclose until well within one year of the filing of this lawsuit.

Kaufman Ex. C, ¶¶ 141-42.

**B.      Sybil Taylor**

In June 1996, NYC assigned the lien for certain outstanding taxes and water sewer charges on plaintiff Taylor's home to the NYCTL 1996-1 Trust.  In July 1999, NYC assigned a second lien for outstanding charges on plaintiff Taylor's home to the 1999-1 Trust, and in July 2001, assigned a third lien on plaintiff Taylor's home to the 1998-1 Trust.   Thereafter, the various Trusts commenced foreclosure actions on plaintiff Taylor's home.  Kaufman Ex. C, ¶¶ 82-86.

In April 2003, plaintiff Taylor requested Payoff Quotes on the outstanding tax liens from the Trusts and JER, and requested a second Payoff Quote in November 2003.

Kaufman Ex. C, ¶¶ 87-90.

On December 10, 2003, plaintiff Taylor paid off liens held by the Trusts based on the payoff figures provided by JER.  Kaufman Ex. C, ¶ 98.  On March 26, 2004, the Trusts mailed refund checks to plaintiff Taylor, representing a purported amount that she was overcharged and that she overpaid.  Kaufman Ex. C, ¶ 104.

According to the Amended Complaint, unbeknownst to Taylor, the amount demanded by the 1998-1 Trust included a Debt Cancellation or Discontinuance Fee for purported legal services in the amount of $250.00. Kaufman Ex. C, ¶ 94.   The Complaint further alleges that, upon information and belief, Taylor was also charged a Debt Cancellation Fee by the 1996-1 and 1999-1 Trusts.  Kaufman Ex. C, ¶ 95.

The Amended Complaint alleges that it was not until November 12, 2004, when JER provided discovery in the Binson action about instances in which the 1998-1 Trust charged for so-called "Debt Cancellation Fees", that JER or the 1998-1 Trust first disclosed that a "Debt Cancellation Fee" had been assessed by JER and the 1998-1 Trust against plaintiff Taylor's account.   Kaufman Ex. C, ¶ 109.  Moreover, the Amended Complaint further alleges that it was not until March 2005, during depositions in the Binson action, that JER and the 1998-1 Trust first disclosed "that the so-called "Debt Cancellation Fee" charged to plaintiff Taylor on December 10, 2003 was for purported "legal services" which had not yet been rendered.  Kaufman Ex. C, ¶¶ 110-111.

Moreover, the Second Amended Complaint alleged that:

> To this day, the 1996-1 and 1999-1 Trusts have failed to disclose whether they charged Taylor for a so-called Debt Cancellation Fee, or for legal fees for legal services which had not yet been performed, or for any legal fees or costs which the 1996-1 and 1999-1 Trusts allegedly was entitled to collect.

Kaufman Ex. C, ¶ 112.

### C.        Defendant's Concealment of the Facts Relating to Improper Fees

In their respective motions, both the Trusts and JER claim that had plaintiffs

Warters and Taylor merely asked "what a proffered Payoff Quote was comprised of",

there is no evidence to indicate "that defendants would not have provided such

information." (JER Brief in Support of Dismissal, p. 16).   However, in the course of this

litigation, plaintiffs have repeatedly asked the Trusts and JER to disclose whether they

charged any "debt cancellation" or "discontinuance" fees for purported legal services to

plaintiffs Warters and Taylor.  Despite the aid of attorneys advocating on behalf of the

plaintiffs and the Federal Rules of Civil Procedure, both JER and the Trusts have

effectively refused to provide such information.  In fact, counsel for JER's counsel

disclosed that, despite providing "debt cancellation logs" for the 1998-1 Trust in the

Binson action, and despite the pendency of this litigation, JER has reportedly "lost"

computers that could have provided debt cancellation logs relating to properties subject to

liens held by the 1996-1, 1997-1 and 1999-1 Trusts.  See Kaufman ¶ 5 and Ex. D (letter

dated May 12, 2009 from Kaufman to JER's attorney, Jonathan Elliot).

Thus, during discovery taken in this action, plaintiffs asked defendant JER to

provide the amount and date of any Debt Cancellation Fee or fee to discontinue action

paid by JER and the Trust and charged to any plaintiff.  See Kaufman Ex. E (JER's

Responses to Plaintiff's Interrogatories), at ¶ 8(b).   In response, JER objected and

refused to answer this interrogatory, and instead directed plaintiffs' attention to an exhibit

referenced in the Trusts' interrogatory responses which provides no information

whatsoever as to whether defendants charged plaintiffs Warters or Taylor, or any other

plaintiff, for legal fees purportedly associated with cancelling their debts. See id., and Response to ¶ 8(b).

Similarly, in Interrogatories directed to the Trusts, plaintiffs also asked the Trusts to provide information regarding any Debt Cancellation Fee charged to the plaintiffs. See Kaufman Ex. F (Trusts' Response to Plaintiffs' Interrogatories dated May 1, 2009), at ¶ 8. In their responses, the Trusts objected and refused to respond to this interrogatory on the ground that "it calls for information in the possession, custody, and/or control of another party to this action," apparently referring to JER. See id., ¶ 8

In Document Requests to JER, plaintiffs demanded that JER provide them with a copy of Debt Cancellation Fee reports for the 1996-1, 1997-1 and 1999-1 Trust showing all accounts in which a debt cancellation or discontinuance fee for legal services was posted. See Kaufman Ex. G (JER's Response to Plaintiffs' First Request for the Production of Documents), ¶ 30. Significantly, in response to a similar discovery request in the Binson action, JER had provided a list of 1,337 properties on which the 1998-1 Trust had liens in which a "debt cancellation fee" for purported legal services was posted. See Kaufman Ex. H (letter dated November 12, 2004 from JER's attorney and excerpts from accompanying documents showing "debt discontinuance fees"). Although JER provided such information with regard to the 1998-1 Trust, JER responded to plaintiffs Warters' and Taylor's request for debt cancellation fee information regarding the 1996-1, 1997-1 and 1999-1 Trusts as follows:

> Defendants object to this request on the ground that the request is unduly vague, as the term "Debt Cancellation Fee Reports" is not defined, and defendants do not refer to any documents in their possession as Debt Cancellation Fee Reports.

Id. at  12, ¶ 30.[2]

    In fact, in a recent telephone conversation regarding discovery between plaintiffs'
attorney Mark Kaufman and JER's counsel, Jonathan Elliot, Mr. Elliot advised Kaufman
that the information  in JER's computer systems regarding the NYCTL Trusts had
purportedly been lost or destroyed sometime during 2007.  Kaufman Ex. D (May 12,
2009 letter), at 1.

## ARGUMENT

### POINT I.

### WARTERS' AND TAYLORS' FDCPA CLAIMS ARE SUBJECT TO EQUITABLE TOLLING

    In their respective motions, JER and the Trusts argue that the FDCPA claims of
plaintiffs Warters and Taylor are barred by the FDCPA's one-year statute of limitations.
According to defendants, the statute of limitations on plaintiff Warters' FDCPA claims
began to run on May 19, 2004, when she paid for the allegedly illegal attorneys' fees and
expenses, and thus the FDCPA claim fell one day beyond the limitations period when she
commenced this action on May 20, 2005.  As for plaintiff Taylor, defendants claim that
the statute of limitations on her FDCPA claim expired on December 10, 2004, one year
after defendants collected the allegedly illegal attorneys' fees and costs from  Taylor, and

---

[2] In a letter to JER's counsel dated May 12, 2009 responding to JER's discovery objections,
plaintiffs' counsel stated the following with regard to JER's refusal to provide information
regarding debt cancellation charges:

> In the Binson action, JER was able to generate a list of all
> properties with liens assigned to the 1998-1 Trust which were
> assessed a debt cancellation fee.  JER provides no reason
> whatsoever why an identical list cannot be generated … for the
> other Trusts."

Kaufman Ex. __ (letter dated May 12, 2009 from Kaufman to Jonathan Elliot, attorney for JER),
at 2.  To date, JER has failed to respond to this letter.

six months before the commencement of this action.

However, the claims in plaintiffs Warters' and Taylor's Complaint are clearly subject to equitable tolling.   As the Second Circuit has stated, "the essence of the doctrine [of equitable tolling] is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60 (2d Cir. 1986) (citations omitted).  Both the Trusts and JER repeatedly contend that the doctrine of equitable tolling requires that the defendant have engaged in some wrongful conduct to conceal their wrongdoing.  See JER Brief at 11 ("Equitable tolling only applies where defendant has engaged in conduct to conceal wrongdoing"); JER Brief at 17 ("there are no allegations of fraudulent conduct beyond the alleged FDCPA violations themselves, and thus the plaintiffs may not invoke equitable tolling").

However, in Valdez v. U.S., 518 F.2d 173, 182-83 (2d Cir. 2008), the Second Circuit vacated a district court's refusal to apply equitable tolling based on a lack of fraudulent concealment", and repudiated the idea that concealment was necessary:

> We here clarify that fraudulent concealment is not essential to equitable tolling… Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations 'if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.  Equitable tolling is frequently confused with fraudulent concealment on the one hand and with the discovery rule – governing… accrual – on the other.  It differs from the former in that it ***does not assume a wrongful – or any – effort by the defendant to prevent the plaintiff from suing***.' Cada, 920 F.2d at 451 (citation omitted)
>
> Because equitable tolling is often confused with fraudulent concealment, cases may be found holding that equitable tolling applies where the defendants have engaged in such concealment.  Nevertheless, we have held explicitly that

10

> *the application of equitable tolling is not limited to such cases*.

<u>Valdez</u>, 518 F.3d at 182-83 (emphasis added).[3]

Thus, "the relevant question is not the intention underlying defendant's conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." <u>Veltri v. Building Service 32B-J Pension Fund</u>, 393 F.3d 318, 323 (2d Cir. 2004).

Here, equitable tolling of the statute of limitations on plaintiffs Warters' and Taylor's FDCPA claims is appropriate for at least three separate reasons: (1) plaintiffs Warters and Taylor have alleged that they did not become aware that they had been charged a so-called "debt cancellation fee" for purported legal services by ***any*** Trust until November 2004, a date well within the statute of limitations; (2) the defendants have concealed, and continue to conceal, information about whether the 1996-1, 1997-1 and 1999-1 Trusts charged plaintiffs Warters or Taylor legal fees associated with debt cancellation, and JER appears to have purged evidence on this issue; (3) under well-settled law, plaintiffs Warters' and Taylor's motion to intervene in the <u>Binson</u> action filed on February 15, 2005 should equitably toll the statute of limitations as of that date.

---

[3] <u>See also</u> <u>Matter of Mediators, Inc.</u>, 190 B.R. 515, 524 (S.D.N.Y. 1995), <u>aff'd</u>, 105 F.3d 822 (2d Cir. 1997) ("even in the absence of fraudulent concealment by the defendant, if the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the limitations period is tolled until the fraud is discovered"); <u>Majid v. Fielitz</u>, 700 F. Supp. 704, 706 (S.D.N.Y. 1988), <u>aff'd</u>, 891 F.2d 277 (2d Cir. 1989) ("the doctrine of equitable tolling focuses on plaintiff's purported ignorance of a claim rather than on defendant's alleged concealment of the claim"); <u>Robertson v. Seidman & Seidman</u>, 609 F.2d 583, 593 (2d Cir. 1979) (internal citations omitted) ("[I]f no active concealment is present, then the issue becomes whether knowledge of the alleged fraud could reasonably have been acquired (at an earlier date) with the exercise of due care").

### A.    Plaintiff Warters and Taylor Were "Justifiably Ignorant" of Their FDCPA Claims Until November 2004, At the Earliest

As shown above, courts in this district are permitted to and regularly apply equitable tolling where a plaintiff can establish that he "was blamelessly ignorant of his claim" within the statute of limitations.  Indovino v. Tassinari, 2006 U.S. Dist. Lexis 60993, at *12 (S.D.N.Y. 2006).  See Pointdexter v. Warner/Chappell Music Inc., 2009 U.S. Dist. Lexis 9199, at *12 (S.D.N.Y. 2009) ("justifiably ignorant of his cause of action"); Papworth v. Steel Hector & Davis, 2007 U.S. Dist. Lexis 72864, at *20 (S.D.N.Y. 2007) ("blamelessly ignorant of his claim").

Here, plaintiffs Warters' and Taylor's FDCPA claims have several components. First, plaintiffs Warters and Taylor allege that defendants violated § 1692f(1) of the FDCPA by routinely demanding more to pay off the lien than the amount actually owed. Kaufman Ex. C, ¶¶ 107-109, 137-38.[4]   Plaintiff Warters did not – and could not -- have become aware that she was overcharged and that she overpaid until September 10, 2004, when JER and the Trusts mailed a refund check to her for $5,259.86.  Kaufman Ex. C, ¶ 134.   No "reasonable plaintiff in [plaintiff Warters'] circumstances" would have realized that they had been overcharged -- much less become "aware of the existence of a cause of action" -- until the date defendants acknowledged the overpayment in a letter, which was within the statute of limitations.  Veltri, 393 F.3d at 323.

---

[4] In its responses to plaintiffs' Interrogatories, JER admits that payoff quotes sent to delinquent taxpayers include "projections of the attorneys' fees and costs associated with the prosecution of the foreclosure action."  Kaufman Ex. E, Response to ¶ 10.  In responses to plaintiffs' document requests, JER produced "Overpayment Logs" for each Trust showing thousands of instances in which the defendants demanded more from taxpayers than what was actually owed. (To avoid complications of attaching purportedly "Confidential" documents, plaintiffs decline to attach copies of the overpayment logs from each of the Trusts produced by JER.)

Moreover, the second component of plaintiffs Warters' and Taylor's FDCPA claims against defendants involves allegations that defendants charged plaintiffs Warters and Taylor for attorneys' fees and costs (which they did ***not*** refund), which fees and costs were either illusory, or not permitted to be passed on by either statute or contract. Kaufman Ex. C, ¶¶ 100-102, 105-06, 127-130, 133-36.  As part of these prohibited fees, plaintiffs Warters and Taylor allege that the each of the Trusts concealed a purported legal fee associated with "debt cancellation" services among the amounts collected, for legal services which were not only illusory, but had not yet even been conducted. Kaufman Ex. C, ¶¶ 101-02, 104, 128, 133-34.

Both plaintiffs Warters and Taylor allege that they did not and could not have known that they might have been charged a "debt cancellation" legal fee by any of the Trusts until November 10, 2004, when JER disclosed, during discovery conducted in the Binson action, that the 1998-1 Trust had assessed such a fee to plaintiffs Warters and Taylor (among others).  Kaufman Ex. C, ¶¶ 113-15, 141-43.  Moreover, these allegations are supported by admissible evidence produced by defendants. See Kaufman Ex. H (letter dated November 10, 2004 from attorney Elliot to Kaufman and excerpts of "Discontinuance Fee" log for 1998-1 Trust).

Under these circumstances, the facts underlying the claim that plaintiffs Warters and Taylor did not and could not have learned of the possibility that they might have been charged "debt cancellation" legal fees has not only been plausibly and specifically alleged, but  supported by the submission of admissible evidence.  Even without the proffer of any evidence, similar claims of self-concealing violations of TILA and the FDCPA have regularly been upheld by courts in this district. See Council v. Better

Homes Depot, Inc., 2006 WL 2376381, *9-*11 (E.D.N.Y. 2006); McAnaney v. Astoria

Financial Corp., 357 F. Supp.2d 578, 587 (E.D.N.Y. 2005); Weil v. Long Island Savings

Bank, 77 F. Supp.2d 313, 326 (E.D.N.Y. 1999).

Indeed, in the McAnaney case, Judge Spatt denied defendants' motion to dismiss

and found that claims about improperly disclosed fees and costs in violation of TILA --

virtually identical to the claims asserted in this case -- were sufficient, if ultimately

proven, to justify an equitable tolling of the statute of limitations.   In particular, the court

credited allegations virtually identical to this case:

> that the Defendants collect the charges and fees and then return
> some, but not all, of the money owed without advising the
> Plaintiffs that any monies were charged in error.

McAnaney, 357 F. Supp.2d at 587.  Under these circumstances, the court found that the

plaintiff could properly claim "that it only recently learned of the existence of claims

against the Defendants", concluding that "the allegations in the complaint are sufficient

to allege an equitable tolling of the statute."  Id.

## B.   Warters and Taylor Were Not on Inquiry Notice of Their Claims

Despite the allegations (and evidence) supporting plaintiffs Warters' and Taylor's

claim that they were "justifiably ignorant" of their FDCPA claims until well within the

statute of limitations period, defendants nevertheless contend that, as a matter of law,

equitable tolling cannot apply since plaintiffs Warters and Taylor were on so-called

"inquiry notice" of their claims at the time they paid defendants.  Defendants' "inquiry

notice" argument has two components.

### 1.  No Inquiry Notice Arising From the Filing of the Binson Action

First, in a blatant mischaracterization of Judge Bianco's 9/24/08 Order in

connection with defendants' Prior Motions to dismiss, defendants contend that "the Court has ruled that as a matter of law plaintiffs were put on notice of their potential claims by the filing of <u>Binson</u>" in July 2003.  <u>See</u> JER Brief at 20.  However, Judge Bianco did not expressly or impliedly adopt that portion of the Magistrate Judge's Report & Recommendation from which he quotes.  Obviously, if the Court had concluded that plaintiffs Warters and Taylor were put on notice of their FDCPA claims as a matter of law by the July 2003 filing of the <u>Binson</u> action, then the Court would not have allowed plaintiffs to file an Amended Complaint in order to "plead sufficient facts to support equitable tolling and, thus, [to] assert a timely claim under the FDCPA." Kaufman Ex. A (9/24/08 Order) at 9.

In fact, as plaintiffs pointed out, any conclusion that plaintiffs Warters and Taylor were put on notice of their FDCPA claims against the Trusts by the July 2003 filing of the <u>Binson</u> action would be completely illogical, since Taylor and plaintiff Warters did not pay the allegedly improper fees and expenses to defendants until December 2003 and May 2004, respectively.  Thus, their FDCPA claims had not even arisen at the time the <u>Binson</u> action was filed as of July 22, 2003.

In fact, Judge Bianco relied on the fact that plaintiff Warters' and plaintiff Taylor's FDCPA causes of action did not exist at the time the <u>Binson</u> action was commenced to conclude that the statute of limitations with regard to their claims was not tolled by the filing of the <u>Binson</u> action under <u>American Pipe & Const. Co. v. Utah</u>, 414 U.S. 538 (1974):

> The Court agrees with Magistrate Judge Pollak and finds that plaintiffs cannot apply <u>American Pipe</u> to FDCPA claims that did not exist at the time of the filing of the <u>Binson</u> action.  Thus, to the extent both Taylor and plaintiff Warters assert that they made the

15

> allegedly 'illegal' payment pursuant to defendants' demand *after* the Binson action was filed, those claims cannot benefit from tolling under American Pipe.

Kaufman Ex. A (9/24/08 Order) at 7-8 (emphasis in original).

In any event, even if plaintiffs Warters' and Taylor's FDCPA claims had accrued at the time the Binson action was filed, the suggestion that the filing of another suit alleging similar claims to those eventually brought by the plaintiffs establishes inquiry notice as a matter of law is meritless.   Indeed, in Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94 (2d Cir. 2003),  the Second Circuit reversed the District Court's dismissal of a securities fraud claim based on the District Court's conclusion that the plaintiff was put on inquiry notice by the filing of a prior federal complaint.  The Second Circuit found that the new complaint "contain[ed] allegations missing from" the federal complaint, and the "District Court failed to assess whether any of these additional allegations was necessary to state [the plaintiffs'] claim."  Moreover, the Second Circuit also found that the District Court also failed to address "the question of what information was *realistically available* to Plaintiffs" at the time the prior suit was filed "and when it was available."  340 F.3d at 104 (emphasis added).

### 2.  No Notice Arising from Defendants' Assessing Attorneys' Fees

Defendants also claim that plaintiffs Warters and Taylor were under a "duty of inquiry" at the time they paid the amounts demanded by the defendants, and thus that the FDCPA statute of limitations cannot be subject to equitable tolling after that point. According to the Trusts, at the time they paid off the liens, plaintiffs Warters and Taylor "clearly had sufficient information to place [them] on notice of the charges that [they] now claim were illegal and form the basis of [their] FDCPA claims." Trust Brief at 13.

Similalry, according to JER:

> Any alleged costs, charges or fees included in a Payoff
> Quote could have been discovered by questioning what a
> proffered Payoff Quote was comprised of.  Plaintiffs do not
> allege that they even once asked for information about the
> Payoff Quotes from defendants during the period they now
> seek to have tolled, nor are there any allegations that
> defendants would not have provided such information.

JER Brief at 16.  Thus, defendants assert, because plaintiffs Warters and Taylor

purportedly could have learned that they were being charged for attorneys' fees which

cannot be passed on – including a legal fee for "debt cancellation" services which had not

yet been performed -- "by simply asking" (Trusts Brief at 9), plaintiffs' alleged "lack of

diligence deprives [them] of the right and ability to assert an equitable estoppel argument

against defendants' statute of limitations defense." Trusts Brief at 12.

There are several fundamental flaws with defendants' theory.

First, defendants completely mischaracterize the point at which a duty of inquiry

is triggered which might terminate an equitable tolling of the statute of limitations.  A

duty to investigate arises, not when a plaintiff could theoretically have discovered facts

which might have ultimately made him aware that he had a cause of action, but rather

"when the circumstances would suggest to [a person] of ordinary intelligence *the*

*probability that she has been defrauded*."  Shah v. Meeker, 435 F.3d 244, 249 (2d Cir.

2006) (emphasis added), quoting Dodds v. Cigna, 12 F.3d 346, 350 (2d Cir. 1993).

Indeed, for a duty of inquiry to arise, the Second Circuit has repeatedly stated that "the

fraud must be *probable*, not merely *possible*."  Newman v. Warnaco Group, Inc., 335

F.3d 187, 193 (2d Cir. 2003)

17

Here, defendants have not and cannot point to any facts which existed at the time plaintiffs Warters and Taylor paid off the delinquent tax liens which would have given either one of them any indication that they might be the victims of a scheme to recover improper attorneys' fees and costs, much less demonstrated the probability of improper conduct.[5]  There were no facts suggesting defendants' wrongful conduct at the time defendants actually engaged in wrongfully charging plaintiffs for improper fees and costs.  Thus, defendants' lack of diligence argument must fail.  Newman, 335 F.3d at 195 (Second Circuit held that because "plaintiffs did not have inquiry notice of the alleged fraud, we need not address Defendant's further argument that plaintiffs did not act with reasonable diligence to discover the fraud").

In any event, while the defendants claim that plaintiffs Warters and Taylor could have uncovered details about the attorneys' fees and expenses that the Trusts charged if they had simply asked, the evidence demonstrates otherwise.  Rather, as set forth herein, in discovery conducted in this litigation, both plaintiffs Warters and Taylor have requested that the 1996-1, 1997-1 and 1999-1 Trusts provide information about any legal fees associated with "debt cancellation" which they were charged. See pp. 6-9, *supra*.

To date, the Trusts and JER have failed to offer any meaningful response to the duly-noticed demands for disclosure of these debt-cancellation legal fees, despite the fact that, in the Binson action, the 1998-1 Trust produced a list in November 2004 showing over 1,200 properties (including those owned by plaintiffs Warters and Taylor) on which a debt cancellation legal fee had been posted by that Trust.  See. Kaufman Ex. H

---

[5] In fact, since the assigned tax lien obligations emanated from NYC (and NYC has an ownership interest in the Trusts), the plaintiffs "were entitled to presume" that the fee determination "was the considered judgment of an [entity] faithfully administering the law." Dixon v. Shalala, 54 F.3d 1019, 1032 (2d Cir. 1995) (applying equitable tolling to government conduct)

(excerpts from Discontinuance Fee log).   As a result of defendants' stonewalling, plaintiffs Warters and Taylor have reason to believe, but ***still do not know***, whether they were charged a legal fee for "debt cancellation" services by the 1996-1, 1997-1 or 1999-1 Trusts.

Under these circumstances, where "vital information bearing on the existence of plaintiffs' claims" continues to be concealed by the defendants despite repeated efforts to obtain disclosure, Valdez, 518 F.3d at 182, defendants cannot possibly demonstrate that plaintiff Warters or Taylor were aware of their federal claims, and slept on their rights "in the face of inquiry notice."  In re Global Crossing Ltd., 313 F. Supp.2d 189, 203 (S.D.N.Y. 2003).

Even if there were probative evidence indicating that – at some point before May 20, 2004 -- plaintiff Warters or Taylor had a basis for believing that they were being charged improper attorneys' fees, that would not justify rejecting the application of equitable tolling at this juncture.  As courts in this Circuit routinely hold, "a motion to dismiss on the basis of a plaintiff's failure to engage in due diligence cannot be granted unless the undisputed facts show a lack of reasonable diligence."  G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp.2d 521, 542 (S.D.N.Y. 2002);  Harrison v. Rubenstein, 2007 U.S. Dist. Lexis 13118, at *32 (S.D.N.Y. 2007) ("it is inappropriate at this stage for the Court to determine at what point [after plaintiff's duty of inquiry arose] that they should reasonably have known of the fraud they allege");  In re Natural Gas Commodity Litigation, 337 F. Supp.2d 498, 514 (S.D.N.Y. 2004) ("whether a plaintiff was placed on inquiry notice for a cause of action raises a factual dispute that cannot be summarily resolved, though to be sure if facts in the complaint conclusively indicate that a plaintiff

did or should have had knowledge of the violation within the statute of limitations. . . the limitations period should not be tolled"); Nelson v. Stahl, 173 F. Supp.2d 153, 166 (S.D.N.Y. 2001) ("the question of whether plaintiffs should have discovered the fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact").

Thus, because plaintiffs Warters and Taylor were justifiably ignorant of their FDCPA claims until well within twelve months of the filing of this action in May 2005, equitable tolling of the statute of limitations applies.

### C.   Defendants' Concealment of Critical Facts Regarding Plaintiffs' Claims Warrants Equitable Tolling

While plaintiffs need not demonstrate that defendants concealed vital information regarding a cause of action to establish a right to equitable tolling, Valdez, 518 F.3d at 182-83, here there is evidence of a concerted effort on the part of both JER and the Trusts to withhold critical information concerning the assessment of "debt cancellation" legal fees by the 1996-1, 1997-1 and 1999-1 Trusts.  As shown herein, defendants have repeatedly stonewalled plaintiffs' efforts to determine whether they were charged purported legal fees for debt cancellation services by these Trusts, as well as the number of other delinquent New York City taxpayers who were also charged such fees.

Indeed, during a conversation with plaintiffs' counsel, JER's attorney indicated that JER "lost" access to a computer system that contains critical evidence in this action, apparently including information concerning other NYC taxpayers who were charged legal fees for debt cancellation services.  Kaufman ¶ 5 and Ex. D.  Defendants' destruction of information material to this action constitutes not only a sanctionable offense, but provides a separate and independent basis for the application of equitable

tolling.  Kronisch v. Gottlieb,  150 F.3d 112, 126 (2d Cir. 1998)  ("It is a well-established and long-standing principle of law that a  party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction") .

### D.   Warters' and Taylor's Attempt to Intervene in the Binson Action Supports Equitable Tolling as of February 15, 2005

Finally, even if plaintiffs Warters and Taylor could not demonstrate that equitable tolling of the statute of limitations should apply because they were justifiably ignorant of their FDCPA claims, their attempt to intervene in the Binson action by means of a motion filed on February 15, 2005 put defendants on notice that plaintiffs Warters and Taylor intended to pursue an FDCPA claim against them, and their actions should toll the statute of limitation as of that date.

Thus, on February 15, 2005, counsel for plaintiffs Warters and Taylor filed a motion in the Binson action for leave to file an amended Complaint seeking to add Warters and Taylor as plaintiffs, asserting claims against the 1996-1, 1997-1, 1998-1 and 1999-1 Trusts.  See Kaufman Ex. I (Notice of Motion to Amend Complaint dated February 15, 2005 and proposed Amended Complaint in Binson action).  Each of these Trusts was served with a copy of the proposed Amended Complaint containing Warter's and plaintiff Taylor's claims.  See Kaufman Ex. J (Summonses in Binson action dated February 24, 2005 with waiver of service of process signed on behalf of Trusts dated February 28, 2005).  While that motion was pending, the Binson action was voluntarily dismissed, and the Court ultimately found that the Motion to Amend to add plaintiffs Warters' and Taylor's claims against the Trusts was moot.  See Kaufman Ex. B (Report & Recommendation in Binson).

As the Second Circuit has stated, "equitable tolling principles have been applied where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period." Brown v. Parkchester South Condominiums, 287 F.3d 58, 60 (2d Cir. 2002) (citations and quotations omitted).

Courts have applied equitable tolling to the statute of limitations in these instances because the purposes of the limitations period are largely accomplished – even if defectively – by serving the defective pleading. As the U.S. Supreme Court stated in Burnett v. New York Central R.R., 85 S.Ct. 1050, 1054 (1965):

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

85 S.Ct. at 1054, 380 U.S. at 428, quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 64 S.Ct. 582, 586 (1944)

In Burnett, the plaintiff filed a timely action in a state court in Ohio which was dismissed because venue was improper. Eight days later, the plaintiff commenced an identical action in federal court in Ohio. After the Sixth Circuit affirmed the dismissal of the federal action on statute of limitations grounds, the U.S. Supreme Court reversed, finding that the statute of limitations was equitably tolled as of the date that the defective state action was filed. Noting that "service of process was made upon the [defendant] notifying him that [plaintiff] was asserting his cause of action", the Court held that tolling was appropriate because:

> Respondent could not have relied upon the policy of repose
> embodied in the limitation statute, for it was aware that petitioner
> was actively pursuing his FELA remedy…

85 S.Ct. at 1055, 380 U.S. at 430.  Numerous courts have followed <u>Burnett</u>, finding that a

statute of limitations is tolled by the filing of a pleading which ultimately turns out to be

defective, because the defendant is put on notice as of that point that the plaintiff intends

to pursue its claims.  <u>See</u>, <u>e.g.</u>, <u>Clymore v. U.S.</u>, 217 F.3d 370, 375-76 (5th Cir. 2000)

(applying equitable tolling as of date that plaintiff filed action in the wrong venue which

led to dismissal, stating that "it has not been argued, and cannot seriously be, that the

government was unfairly surprised when [plaintiff] initiated the instant [second]

proceeding"); <u>Whitaker v. U.S.</u>, 815 F. Supp. 764, 765 (D.Vt. 1993) (applying equitable

tolling as of date that plaintiff filed prior pleading which was dismissed for failure to

bring suit against a proper party, where it was clear that "plaintiff was actively pursuing

his judicial remedies");  <u>In re Randall's Island Family Golf Center, Inc.</u>, 288 B.R. 701,

704-707 (Bank. S.D.N.Y. 2003) (finding that equitable tolling applied at time plaintiffs

commenced a timely preference action which was dismissed for procedural reasons,

where the defendants knew by reason of the first pleading "that the plaintiff intended to

pursue the claims, and have not been prejudiced").

      Here, the attempt to add plaintiffs Warters' and Taylor's claims against the Trusts

by amending the Complaint in the <u>Binson</u> action clearly put the Trusts on notice as of

February 24, 2005 -- the date they were served – that plaintiffs Warters and Taylor were

"actively pursuing" their FDCPA remedy against the Trusts.  Under <u>Burnett</u> and its

progeny, the statute of limitations on plaintiff Warters' and plaintiff Taylor's FDCPA

claims should be tolled as of that date.

Since even defendants do not argue that the statute of limitations on plaintiff Warters' FDCPA claims accrued any earlier than May 19, 2004, the date she paid off the liens, application of equitable tolling as of the date of the filing of the Proposed Amended Complaint in the <u>Binson</u> action (as of February 2005) renders unquestionably timely the plaintiff Warters' FDCPA claims (filed in this action on May 20, 2005).

As for plaintiff Taylor, while she paid off her liens on December 10, 2003, she did not receive a refund from the Trusts until March 26, 2004, which was the first indication that she might have been overcharged. Kaufman Ex. C, ¶¶ 98 and 104. Even assuming that the court could conclude that, as a matter of law, plaintiff Taylor was on inquiry notice of her FDCPA claims against the Trusts as of March 26, 2004, the service and filing of the Proposed Amended Complaint in February 2005 was less than one year after this theoretical "inquiry notice" date. Thus, for this reason as well, plaintiff Taylor's FDCPA claims against the Trusts and JER are not barred by the one-year FDCPA statute of limitations.

## POINT II.

### EVEN IF WARTERS' AND TAYLOR'S FDCPA CLAIMS WERE DISMISSED, THE COURT HAS ALREADY RULED THAT SUPPLEMENTARY JURISDICTION OVER THEIR STATE LAW CLAIMS IS APPROPRIATE

As shown above, for numerous reasons, the FDCPA claims of plaintiffs Warters and Taylor are not barred by the statute of limitations.

However, even if the Court were inclined to grant defendants' motion to dismiss plaintiff Warters' and Taylor's FDCPA claims, Judge Bianco has already ruled that the exercise of supplementary jurisdiction over plaintiff Warters' and Taylor's state law claims against defendants is proper. Judge Bianco's determination on this point

represents the law of the case, and defendants' attempt to reargue this already-decided issue is clearly improper.

Initially,  in her Report and Recommendation, Magistrate Judge Pollak expressly rejected the argument that the court should not retain jurisdiction over the state claims brought against the Trusts by plaintiffs Warters and Taylor because the only basis for invoking the Court's jurisdiction was under 28 U.S.C. §1367.  Kaufman Ex. B (Report and Recommendation) at 31.  The Magistrate Judge found that considerations of judicial economy and convenience justified the exercise of supplemental jurisdiction over the state law claims, even if Taylor and plaintiff Warters had no federal claims, because the federal and state claims brought by the plaintiffs are "intertwined."  Id. at 32-33.

In his Order, Judge Bianco expressly adopted that part of the Report and Recommendation exercising supplemental jurisdiction over plaintiff Warters' and Taylor's state claims, even if their federal claims were dismissed:

> Defendants also object to the recommendation in the R&R that the Court exercise supplemental jurisdiction over the breach of contract and unjust enrichment claims brought by plaintiffs Taylor and plaintiff Warters, even though it was recommended that the federal claims be dismissed.  As a threshold matter, although the Court is dismissing Taylor and plaintiff Warters' federal claims, the Court is providing them with leave to replead, as requested, to attempt to cure the pleading defects . . . to provide a basis for equitable tolling. In any event, ***the Court agrees with the R&R's conclusion that supplemental jurisdiction is warranted*** over these state law claims because the claims are closely intertwined with the state and federal claims asserted by the other plaintiffs in this lawsuit, and are alleged to arise out of a common nucleus of operative facts in terms of the conduct and practices of the defendants with respect to the fees and charges at issue.

Kaufman Ex. A (9/24/09 Order) at 6 (emphasis added).

In their briefs, the Trusts and JER completely ignore Judge Bianco's findings on this issue, again asserting that the state claims asserted by Taylor and plaintiff Warters

against the 1996-1, 1997-1 and 1999-1 Trusts "could not, and did not, arise from a common nucleus of operative fact" with the federal and state claims brought by the other plaintiffs.  (Trust Brief, p. 20)

      The attempt to re-litigate issues which Judge Bianco has already ruled on is completely improper.  Judge Bianco's ruling on this issue constitutes the law of the case, and defendants cannot raise arguments which have already been raised and expressly rejected by the prior judge assigned to this case.  See Wright v. Cayan, 817 F.2d 999, 1002, n.3 (2d Cir. 1987) (noting that, even after reassignment of a case from one judge to another, the law of the case doctrine "dictates a general practice of refusing to reopen what has been decided");  Rite Aid Corp. v. Am. Home Prods. Corp., 2003 U.S. Dist. Lexis 8232, at *4 (E.D.N.Y. 2003) ("When . . . the judges in a case are switched mid-stream, as happened here, the successor judge may not reconsider his predecessor's rulings with the same freedom that he may reconsider his own rulings.");  Canino v. Barclay's Bank, 1998 U.S. Dist. Lexis 53, at *13, n.1 (S.D.N.Y. 1998) (same);  Official Comm of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (the doctrine of law of the case ensures that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").[6]

---

[6] The proper method for challenging Judge Bianco's ruling on supplementary jurisdiction was to move for reconsideration.  Defendants failed to make any such motion because, as they well know, "a motion to reconsider should not be granted where the moving party seeks solely to re-litigate an issue already decided." In re September 11 Litigation, 2009 U.S. Dist. Lexis 37189 (S.D.N.Y. 2009)

## POINT III.

## PLAINTIFFS HAVE ADEQUATELY ALLEGED
## A CLAIM UNDER §349 OF THE GENERAL BUSINESS LAW

The defendant Trusts also argue that the plaintiffs have failed to allege facts

which would support a claim under §349 of New York's General Business Law ("GBL"),

because "there is no allegation that any representation was ever made to the public."

Trust Brief at 16.   The Trusts contend that the claims in this case amount to nothing

more than a "private contract dispute" between the Trusts and the plaintiffs.

Defendants' argument borders on the ludicrous.  In this putative class action, the

Complaint alleges that the Trusts have charged the named plaintiffs and other delinquent

New York City taxpayers for attorneys' fees and expenses which were not owed and

cannot be passed on.   As Courts interpreting §349 of the GBL have routinely held, a

§349 claim is properly pled "where the acts complained of ***potentially affect similarly

situated consumers***." Koch v. Greenberg, 2008 U.S. Dist. Lexis 76890, at *15-16

(S.D.N.Y. 2009) (emphasis added).  See Yurman Studio v. Castaneda, 591 F. Supp.2d

471, 491 (S.D.N.Y. 2008) ("under New York law, a deceptive act or practice that has 'a

broader impact on consumers at large or similarly situated consumers violates §349);

Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20,

26 (1995) (finding that allegations regarding bank's practices pled a potential §349

violation where the allegations "were not unique to these two parties, nor were they

private in nature or a single shot transaction").

Moreover, §349 has also been held to apply to claims alleging unfair debt

collection practices like those at issue here,  and specifically to violations of N.Y. G.B.L.

§601, which prevents a creditor from collecting or attempting to collect any attorneys'

27

fees or court cost unless "such charges are justly due and legally chargeable against the debtor." Padilla v. Payco General American Credits, 161 F. Supp.2d 264, 277 (S.D.N.Y. 2001) (§349 "allows consumers to file civil damages actions … for violations of N.Y. G.B.L. §601, which pertains specifically to unfair debt collection practices"); Conboy v. AT&T Corp., 84 F. Supp.2d 492, 506, n.11 (S.D.N.Y. 2000) (finding that attempt to collect improper attorneys' fees or expenses in violation of GBL §601 would constitute a violation of §349).

**POINT IV.**

**PLAINTIFFS HAVE ADEQUATELY ALLEGED
A CLAIM AGAINST THE TRUSTS
UNDER N.Y. GENERAL OBLIGATIONS LAW §5-501**

Finally, the defendant Trusts allege that plaintiff Joan Grant Boyd cannot bring a claim under the "Usury Law" §5-501 of the General Obligations Law ("GOL") because "there was neither a loan ***nor a forbearance of money*** involved in the transactions at issue." Trusts Brief at 16 (emphasis added). However, the Trusts know or should know that this contention is patently untrue.

Thus, the Complaint repeatedly alleges that the 1998-1 Trust and plaintiff Boyd entered into a forbearance agreement. (Amended Complaint, ¶¶ 36-38, 46, 51) Moreover, during discovery in this action, plaintiffs provided the Trusts with a copy of the forbearance agreement entered into between plaintiff Boyd's co-owner, her husband Thomas Boyd, and the 1998-1 Trust. See Kaufman Ex. K (Forbearance Agreement dated June 12, 2002, among Thomas Boyd, co-owner with Joan Grant Boyd, the 1998-1 Trust and JER Revenue Services LLC); Kaufman Ex. L (deeds dated September 17, 1973 and February 9, 1986 indicating that Thomas Boyd and plaintiff Joan Grant Boyd were co-

28

owners of the premises at issue herein).

As courts interpreting New York law have routinely found, forbearance agreements such as the one at issue here are clearly subject to New York's usury law setting maximum interest charges. Eikenberry v. Adirondack Spring Water Co. Inc., 65 N.Y.2d 125, 127-28 (1985) (the "agreements were concededly made in consideration of plaintiff's forbearance from suit -- the summons and complaint were already in the hands of a process server -- and are therefore 'forbearances' within the usury law"); Matias v. Arango, 289 A.D.2d 459, 460-61 (2d Dep't 2001) (applying §5-501 to a forbearance agreement staying eviction); Deutsche Bank Nat'l Trust Co. v. Addington Williams et. al., 17 Misc.3d 320, 323, 842 N.Y.S.2d 338, 341 (Kings Co. 2007) ("there is a very real possibility that the sums charged to the defendant for the forbearance agreement were usurious" under §5-501).

Finally, to the extent that the defendant Trusts argue that applying GOL §5-501 to the forbearance agreement with plaintiff Boyd consistent with its plain meaning "would be contrary to public policy",  such an argument should be made to the Legislature. Nothing in GOL §5-501 even remotely indicates that Tax Lien Trusts and their debt servicers were intended to be exempt from the reach of  New York's Usury Law in situations in which the statute clearly applies.

## CONCLUSION

For the foregoing reasons, plaintiffs Joan Grant Boyd, Sybil Taylor and Tanja

Warters respectfully request that the Court issue an Order denying in their entirety the

motions to dismiss of defendant NYCTL 1996-1 Trust, NYCTL 1997-1 Trust, 1998-1

Trust and 1999-1 Trust, and J.E. Robert Co., Inc. and JER Revenue Services, LLC.

Dated:  New York, New York
        May 22, 2009

THE LAW OFFICES OF PAUL GROBMAN          KAUFMAN & KAHN, LLP
/Paul Grobman/_____   /Mark S. Kaufman/_____
Paul Grobman  (PG 1876)                  Mark S. Kaufman (MK 2006)
535 Fifth Avenue, 33rd Floor             747 Third Avenue, 32nd Floor
New York, NY 10017                       New York, NY  10017
 Tel: (212) 983-5880                      Tel: (212) 293-5556

                                         LAW OFFICES OF CURTIS V. TRINKO, LLP
                                         /Curtis V. Trinko/_____
                                         Curtis V. Trinko (CT 1838)
                                         16 West 46th Street, 7th Floor
                                         New York, NY 10036
                                         Tel:  (212) 490-9550

                                         Attorneys for Plaintiffs