UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

JOAN GRANT BOYD, RANDA JONES, HUMBERTO
MENESES, SYBIL TAYLOR, and TONYA
WARTERS, ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED,

                      *Plaintiffs*,

   -against-

J.E. ROBERT CO., INC., JER REVENUE
SERVICES, LLC, NYCTL 1996-1 TRUST,
NYCTL 1997-1 TRUST, NYCTL 1998-1
TRUST, NYCTL 1999-1 TRUST,

                     *Defendants*.

-------------------------------------X

**NOT FOR PUBLICATION**

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

05-CV-2455 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

       Plaintiffs Joan Grant Boyd ("Boyd"), Randa Jones

("Jones"), Humberto Meneses ("Meneses"),[1] Sybil Taylor

("Taylor"), and Tanja Warters ("Warters") (collectively,

"plaintiffs"), commenced this action on behalf of themselves and

a putative class of others similarly situated against defendants

J.E. Robert Co., Inc. and JER Revenue Services LLC (collectively,

"JER defendants"), and NYCTL 1996-1 Trust ("1996-1 Trust"), NYCTL

1997-1 Trust ("1997-1 Trust"), NYCTL 1998-1 Trust ("1998-1

Trust"), and NYCTL 1999-1 Trust ("1999-1 Trust") (collectively,

"Trust defendants")[2] alleging violations of the Fair Debt

---

[1]    Meneses is no longer a party to this action. (See ECF No. 153,
Stipulation of Dismissal dated 12/30//2009.)

[2]    Claims against an additional Trust defendant, NYCTL 1997-2, were later
voluntarily dismissed by plaintiffs upon representations by the Trust
defendants that no such entity exists. (See ECF No. 18, Ltr. dated

Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and violations of state statutes and common law. (See ECF No. 1, Compl.) Before the court are defendants' renewed motions to dismiss certain claims and plaintiffs' opposition. (See ECF Nos. 112, Motion to Dismiss by J.E. Robert Co., Inc. ("JER Def. Mot."); 114, Notice of Motion to Dismiss by NYCTL 1996-1 Trust, NYCTL 1997-1 Trust, NYCTL 1998-1 Trust, NYCTL 1999-1 Trust ("Trust Def. Mot."), and 113, 115, supporting documentation; see also ECF No. 118, Pl. Opp. to Mot. to Dismiss ("Pl. Opp."), and 116, 117, supporting documentation.)

Magistrate Judge Ramon E. Reyes has issued a Report and Recommendation ("R&R") recommending that the defendants' motions to dismiss be granted in part and denied in part. (ECF No. 182, R&R dated 3/31/10.) Plaintiffs have timely objected to the R&R, and defendants have responded. (See ECF Nos. 186, Plaintiffs' Objections to the R&R dated 4/14/10 ("Pls. Obj."), and 184, 185, supporting documentation; 189, Defendants' Opposition to Plaintiffs' Objection to the R&R dated 5/10/10 ("JER Def. Mem."); 190, NYCTL Trusts' Response to Plaintiffs' Objections to the R&R ("Trust Def. Mem.").) Having undertaken a *de novo* review of the record in light of the parties' written objections pursuant to 28 U.S.C. § 636(b)(1)(C), the court adopts the R&R as set forth below and for the reasons that follow.

---

1/18/2007.)

**<u>BACKGROUND</u>**

As noted by Judge Reyes, this case boasts a "somewhat convoluted procedural history." (R&R at 2.) The detailed facts and background in this matter are set forth in Judge Reyes' R&R and a previous R&R by Magistrate Judge Cheryl Pollak and Order by Judge Joseph Bianco. The relevant facts are repeated here only to the extent necessary for the court's analysis. (<u>Id.</u> (<u>citing</u> ECF No. 63, Report and Recommendation dated 3/20/2008 ("2008 R&R").)

**A. The <u>Binson</u> Action**

On July 22, 2003, Isaac and Miriam Binson (the "Binsons") filed a putative class action against the JER defendants, the 1998-1 Trust, and others alleging, *inter alia*, violations of the FDCPA. (<u>See</u> <u>Binson v. J.E. Robert Co., Inc.</u>, 03-cv-3562 (JG) (E.D.N.Y.) (the "<u>Binson</u> action").) The <u>Binson</u> action putative class was defined to include those persons whose claims arose between July 23, 2002 and July 22, 2003, or within the one-year FDCPA statute of limitations period prior to the filing of the <u>Binson</u> action (the "<u>Binson</u> class period"). (<u>See</u> 2008 R&R at 27 (<u>citing</u> 15 U.S.C. § 1692k(d)).) Specifically, to qualify as a member of the putative <u>Binson</u> FDCPA class, a prospective plaintiff needed to: (1) have owned property within the City of New York during the <u>Binson</u> class period ("first class criteria"); and (2) been told that they owed allegedly improper

fees or charges by the <u>Binson</u> defendants during that same period
("second class criteria"). (<u>See</u> R&R at 11.)

On May 26, 2005, prior to the certification of the
putative <u>Binson</u> class, the Binsons voluntarily withdrew their
claims with prejudice pursuant to Federal Rule of Civil Procedure
41(a)(1). (<u>Id.</u> at 3.) The <u>Binson</u> action was ultimately
dismissed on January 19, 2007. (<u>Id.</u> at 4.)

**B. This Action**

While the <u>Binson</u> action was still pending, plaintiffs
commenced this action on May 20, 2005 against the JER defendants
and the Trust defendants. (<u>See</u> ECF No. 1, Compl.) Plaintiffs'
amended complaint, dated February 5, 2007 alleged that the JER
defendants and Trust defendants (together, "defendants") violated
the FDCPA and various state statutes and common law when the JER
defendants improperly demanded and collected fees in connection
with the servicing of residential tax liens assigned to the Trust
defendants by the City of New York. (See ECF No. 20, Am. Compl.)

**1. Defendants' Motions to Dismiss the Amended Complaint**

The JER defendants and Trust defendants separately
moved to dismiss the amended complaint on a variety of grounds
including that all plaintiffs' federal FDCPA claims were time-
barred by the one-year statute of limitations for such claims, 15
U.S.C. § 1692k(d). (<u>See, e.g.</u>, ECF Nos. 31, Trust Defendants'
Memorandum dated 4/13/2007; 33, JER Defendants' Memorandum dated

4/16/2007.) Plaintiffs countered, *inter alia*, that the court should find their federal FDCPA claims timely on the grounds that the statute of limitations had been tolled in one of two ways: by the filing of the <u>Binson</u> action under the doctrine articulated by the Supreme Court in <u>American Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538 (1974) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action") ("<u>American Pipe</u> tolling")[3] or, alternatively, through the application of equitable tolling. (<u>See, e.g.</u>, ECF No. 36, Plaintiffs' Opposition to Motions to Dismiss dated 6/1/2007.) Judge Bianco, then presiding over this action, referred defendants' motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation. (<u>See</u> Order Referring Motions dated 3/23/2007.)

### 2. The Order Granting in Part the Motions to Dismiss the Amended Complaint and Granting Leave to Re-Plead

In a Report and Recommendation filed March 20, 2008, Judge Pollak recommended granting in part and denying in part defendants' motions to dismiss. (<u>See</u> 2008 R&R.) Judge Pollak first found that <u>American Pipe</u> tolling operated to save Boyd's and Jones's otherwise untimely FDCPA claims against those defendants which were also defendants in the <u>Binson</u> action,

---

[3]    Judge Pollak's 2008 R&R provides a thorough and nuanced discussion of this doctrine. (<u>See</u> 2008 R&R at 17-24.)

namely, the JER defendants and the 1998-1 Trust. (2008 R&R at 17-29.) Judge Pollak further concluded that the FDCPA claims of plaintiffs Taylor and Warters could not benefit from American Pipe tolling because neither Taylor nor Warters could meet the two required criteria to qualify as members of the putative Binson class. First, with respect to Taylor, Judge Pollak found that because Taylor could not establish her ownership of the relevant property in New York City during the Binson class period, Taylor did not meet the first class criteria. (2008 R&R at 27.) Second, Judge Pollak found that based upon the allegations in the amended complaint neither Taylor nor Warters could meet the second class criteria for inclusion in the putative Binson class because they did not allege any receipt of allegedly improper fee communications during the Binson class period. (See id. at 27, see also Memorandum & Order dated 9/24/2008 at 7-8 ("2008 Order").) Accordingly, Judge Pollak found that American Pipe tolling could not operate to toll the limitations period for those FDCPA claims by Taylor and Warters that did not exist at the time of the filing of the Binson action. (2008 R&R at 26-29.)

With respect to equitable tolling, Judge Pollak first acknowledged defendants' argument that plaintiffs had pled insufficient facts "as to what was allegedly concealed" to warrant the application of equitable tolling. (Id. at 30-31.)

Judge Pollak, however, ultimately rejected plaintiffs' equitable tolling argument, "defendants' pleading standards argument notwithstanding." Judge Pollak found that as a matter of law, the filing of the Binson action on July 22, 2003 placed plaintiffs on inquiry notice of their claims and, thus, the instant action was untimely because it was commenced on May 20, 2005, "more than a year after the date that equitable tolling would apply." (2008 R&R at 29-31.)

Absent American Pipe or equitable tolling, Judge Pollak thus determined that both Taylor's and Warters's FDCPA claims were time-barred and recommended that these claims be dismissed. (Id. at 34.) Finally, Judge Pollak recommended that the court retain jurisdiction over the plaintiffs' state law claims but recommended dismissal of plaintiff Taylor's state claims for deceptive and misleading practices under New York General Business Law Section 349 ("Section 349 claim") and overcharges of interest. (Id.)

By order dated September 24, 2008, Judge Bianco adopted the 2008 R&R in its entirety with the exception that he declined to dismiss Taylor's Section 349 claim. (See generally 2008 Order.) Thus, following Judge Bianco's 2008 Order, plaintiffs' remaining claims consisted of: (1) Boyd's and Jones's FDCPA claims against the JER defendants and the 1998-1 Trust, and (2) all plaintiffs' claims under state statutory and common law

against all defendants.  (See R&R at 7.)

Judge Bianco also granted plaintiffs Taylor and Warters leave to re-plead their FDCPA claims in order to address the deficiencies regarding those claims which were identified in the 2008 R&R. (See 2008 Order at 11.)  Specifically, noting Taylor's claim that she had "beneficial owner" status with respect to the subject property during the Binson class period, Judge Bianco permitted Taylor "an opportunity to re-plead to more clearly articulate how and when she claims she became the beneficial owner of the property" and thereby satisfy the first class criteria for American Pipe tolling of the FDCPA limitations period.  (See id. at 8-9.) Further, noting Warters' claim that "she can still plead sufficient facts to support equitable tolling" of her FDCPA claim, Judge Bianco permitted Warters an opportunity to re-plead to include "additional allegations of the self-concealing nature of the wrongful actions" alleged in the complaint which might warrant the application of equitable tolling.  (See id. at 9-10.)

### 3. The Instant Motions to Dismiss the Second Amended Complaint and the R&R

Plaintiffs filed a second amended complaint on November 12, 2008, again raising claims pursuant to both the FDCPA and various state statutory and common law grounds. (See ECF No. 83, Second Am. Compl.)  The JER defendants and Trust defendants then separately renewed their motions to dismiss certain claims.  (JER

Def. Mot., Trust Def. Mot.)  Specifically, defendants now move again to dismiss both Taylor's and Warters's FDCPA claims as time-barred and again urge the court to decline supplemental jurisdiction over the state law claims raised by Taylor and Warters.  (See generally JER Def. Mot., Trust Def. Mot.) Additionally, the Trust defendants argue that certain of plaintiffs' state law claims are meritless and should be dismissed.  (See Trust Def. Mot.)

In light of Judge Bianco's prior ruling, Judge Reyes, in his thorough and well-reasoned R&R essentially sought to determine first, "whether Taylor has successfully re-pled facts to establish her membership in the Binson class, and thereby benefit from American Pipe tolling," and second, whether Warters adequately re-pled facts demonstrating "the 1997-1 Trust's active concealment, or at the very least the self-concealing nature, of the improper conduct" to entitle Warters to equitable tolling. (2008 R&R at 11, 14.)  Judge Reyes answered both questions in the negative, and accordingly recommended the dismissal of both Taylor's and Warters's FDCPA claims as time-barred.  (Id. at 38-39.)  Further, Judge Reyes recommended that the court reject plaintiffs' unauthorized attempts to assert additional federal claims against all named defendants in the second amended complaint, dismiss plaintiff Boyd's state law usury claim under New York General Obligations Law Section 5-501, and retain

jurisdiction over plaintiffs' remaining state law claims. (Id.;
see also id. at 32-33.)


## STANDARD OF REVIEW

To the extent that a party makes specific and timely
objections to a magistrate's findings, the court must apply a *de
novo* standard of review.  United States v. Male Juvenile, 121
F.3d 34, 38 (2d Cir. 1997); 28 U.S.C. § 636(b)(1)(C).  Upon such
*de novo* review, the district court "may accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  However,
where no objection to a Report and Recommendation has been filed,
the district court "need only satisfy itself that that there is
no clear error on the face of the record."  Urena v. New York,
160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting Nelson v.
Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).


## DISCUSSION

In light of plaintiffs' timely objections, the court
has undertaken a *de novo* review of the full record including the
applicable law, the pleadings, the parties' submissions in
connection with defendants' motions to dismiss the amended
complaint, the 2008 R&R, the 2008 Order, the second amended
complaint, the parties' submissions on the instant motions, the

R&R, and the plaintiffs' objections and defendants' responses to the R&R.  See 28 U.S.C. § 636(b)(1)(C).

Plaintiffs pose three central objections to the R&R. First, plaintiffs argue that the R&R erred by failing to convert the pending motions to dismiss into motions for summary judgment. (Pls. Obj. at 8-14.)  Second, plaintiffs contend that upon conversion of the motions into summary judgment motions, the consideration of additional evidence beyond the scope of the pleadings but presented to the court by plaintiffs shows that actionable conduct occurred during the one-year limitations period prior to the filing of this action on May 20, 2005, and therefore, that Taylor's and Warters's FDCPA claims are not time-barred.  (Pls. Obj. at 14-23.)  Third, plaintiffs dispute the R&R's conclusion that equitable tolling does not apply to plaintiffs' FDCPA claims.  (Pls. Obj. at 23-29.)  Neither party objects to the R&R's conclusion that American Pipe tolling does not apply to Taylor's FDCPA claim or the recommendation that the court reject plaintiffs' unauthorized attempts to add additional federal claims against all named defendants and dismiss Boyd's state law usury claim and retain jurisdiction over plaintiffs remaining state law claims.  Each issue is discussed in turn.

**A. Whether to Convert the Pending Motions into Motions for Summary Judgment and Consideration of Matters Beyond the Pleadings**

Plaintiffs request that this court "reject that portion

11

of the R&R which refused to convert the defendants' respective motions to dismiss to motions for summary judgment" because, according to plaintiffs, after declining to convert the motions the R&R improperly relied on matters outside the pleadings and then erroneously concluded that those extraneous matters fail to demonstrate that actionable conduct occurred within the FDCPA limitations period. (Pls. Obj. at 8-23.)

### 1. The R&R Properly Declined to Convert the Instant Motions into Ones for Summary Judgment

Certainly plaintiffs are correct that "when a court considers matters outside the pleadings" the court must convert a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or 12(c) into one for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56"), and failure to do so is reversible error. (See Pls. Obj. at 9 (quoting Global Network Comm. Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006).) Yet in the converse, where a court does *not* consider matters outside the pleadings in deciding a motion to dismiss – regardless of whether such matters may have been submitted by the parties for the court's consideration – the court need not convert the motion into one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d) ("*If*, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56.") (emphasis added).

Additionally, it is well-settled that even in deciding a motion to dismiss a court may consider, along with the complaint, documents which are matters of public record or which are deemed included in the complaint. See Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (courts "may also look to public records . . . in deciding a motion to dismiss").

In formulating the R&R here, Judge Reyes plainly and pointedly avoided consideration of matters extraneous to the pleadings. Indeed, Judge Reyes explicitly noted the limited materials properly subject to the court's consideration on a motion to dismiss and further noted that reliance on matters extraneous to the pleadings would be "misplaced." (See R&R at 20 (citing United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 451 (E.D.N.Y. 2007)).) After excluding the extraneous matters from its consideration, the R&R thus properly declined to convert the pending motions to motions for summary judgment. See Fed. R. Civ. P. 12(d).

**2. The R&R's Consideration, in the Alternative, of Matters Extraneous to the Complaint Does Not Alter the Propriety of the Decision Not to Convert the Motions**

To the extent plaintiffs argue that Judge Reyes improperly considered matters beyond the pleadings in evaluating the pending motions to dismiss, plaintiffs are incorrect. Rather, as noted, Judge Reyes analyzed the motions to dismiss

solely on the basis of the pleadings pursuant to the applicable standard. (See R&R at 8-20.) Having thus considered defendants' motions to dismiss under the relevant legal standard, the R&R then analyzed, in the alternative, why, had the court converted the Rule 12 motions to summary judgment motions, the extraneous materials submitted by plaintiffs would nevertheless fail to alter the court's conclusion that plaintiffs' tolling arguments were meritless. (See id. at 20-21, 23-27). That consideration, in the alternative, of extraneous materials does not alter the conclusion that Judge Reyes properly declined to convert the pending motions to summary judgment motions when, as explained above, he excluded those extraneous materials from his consideration of the motions to dismiss. See Fed. R. Civ. P. 12(d).

Thus, because Judge Reyes did not rely on the extraneous materials submitted by plaintiffs to formulate his recommendations with respect to the motions to dismiss, plaintiffs' second objection – that the R&R erroneously concluded that the extraneous matters fail to demonstrate that actionable conduct occurred within the FDCPA limitations period – is moot and the court need not address the merits of that objection as it is irrelevant to the merits of the motions to dismiss. (Pls. Obj. at 8-23.) Rather, the court adopts that portion of the R&R which declines to convert the motions into ones for summary

14

judgment and which excludes the extraneous matters presented by plaintiffs from the court's consideration.

Moreover, and in any event, for the following reasons stated in the R&R, even if the motions were converted into ones for summary judgment, plaintiffs' belated factual allegations concerning alleged post-May 19, 2004 debt collection activity cannot operate to save Warters's FDCPA claim.

First, plaintiffs have not objected to the R&R's finding that plaintiffs' additional allegations regarding alleged debt collection communications occurring during the limitations period (Pls. Obj. at 14-18) do not save Warters's Section 1692e FDCPA claim because the alleged additional communications were not initiated by the defendant debt collectors, but by an escrow agent for all parties to the sale. (See R&R at 20 n.9, 25-26 (citing Nichols v. Washington Mutual Bank, No. 07-cv-3216 (JG), 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007) (finding the FDCPA is intended to protect consumers from communications initiated by debt collectors, not consumers) and Gorham-Dimaggio v. Countrywide Home Loans, Inc., No. 05-cv-0583 (TM), 2005 U.S. Dist. LEXIS 34237 (N.D.N.Y. Aug. 30, 2005) (finding that mere response by debt collector to communication initiated by a plaintiff does not constitute actionable collection activity under the FDCPA because "when the consumer initiates the conversation, many of the policy reasons behind the FDCPA

disappear")(collecting cases and noting that neither the court nor plaintiff identified a single case "where a communication initiated by the consumer implicated the FDCPA")); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (discussing legislative purposes of FDCPA and noting that "[t]he FDCPA was passed to protect consumers from deceptive or harassing actions *taken by debt collectors*.") (emphasis added) (abrogated on other grounds).)  Because plaintiffs have not objected to this portion of the R&R, this portion of the R&R's analysis is subject to clear error review.  See Urena, 160 F. Supp. 2d at 609-10 (articulating clear error standard of review for portions of an R&R to which no objections are made) (quoting Nelson, 618 F. Supp. at 1189).  The court finds no clear error in the R&R's conclusion that Warters's failure to allege or present evidence that any communications within the limitations period were initiated by the defendants warrants dismissal of her FDCPA claim, and therefore, this court adopts that portion of the R&R for the reasons set forth in the R&R.  (See R&R at 25-26.)

Second, plaintiffs' additional allegations regarding the escrow agent's July 2004 payment of funds from the escrow account cannot render Warters' Section 1692f FDCPA claim timely as suggested by plaintiffs (Pls. Obj. at 19-23), because those funds were collected from plaintiff on May 19, 2004 and plaintiffs cite no authority for the proposition that collection

from the Verrazano escrow agent, who represented all parties to the sale, constitutes an additional, separate, FDCPA violation sufficient to cause the statute of limitations to begin running anew. (See Trust Def. Mem. at 7 (asserting that the escrow agent does not meet the FDCPA's definition of a consumer and noting that the cases cited by plaintiffs in their objections all concern collections from individual consumers)); see also Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010) (discussing FDCPA's definition of a "consumer" as "a natural person obligated or allegedly obligated to pay any debt") (citing 15 U.S.C. § 1692a(3)).  Further, plaintiffs fail to explain how, absent prescribed contingencies in the escrow agreement, Warters retained title when she deposited funds into an escrow account on May 19, 2004 for the sole purpose of satisfying the liens. (See Trust Def. Mem. at 7 (citing Pls. Obj. at 22; Pls. Ltr. dated 3/18/2010 at Ex. B).)

Thus, the court further adopts the R&R's conclusion that even if the motions were converted into ones for summary judgment, which they were not, and even if the additional allegations based upon plaintiffs' extraneous materials were considered, Warters's FDCPA claims are nonetheless untimely under the one-year statute of limitations.

**B. Analysis of the Motions to Dismiss**

After declining to convert the pending motions to

motions for summary judgment, Judge Reyes analyzed the motions to dismiss and reached conclusions regarding: (i) the applicability of equitable tolling, (ii) the applicability of American Pipe tolling, and (iii) the appropriate treatment of plaintiffs' various state law claims.  Plaintiffs object to the R&R's reasoning and conclusions only with respect to the first issue, equitable tolling, while neither party objects to the R&R's conclusions regarding the applicability of American Pipe tolling or the treatment of plaintiffs' state law claims.

## 1. Objections Related to Equitable Tolling

Plaintiffs object to Judge Reyes's conclusion that plaintiffs' second amended complaint still failed to plead sufficient facts to warrant the application of equitable tolling. (R&R at 13-20.)

### a. Applicable Standard

The doctrine of equitable tolling applies only in "rare and exceptional circumstances" to allow a complainant to file a claim outside the applicable limitations period.  Bertin v. United States, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). Generally, the doctrine applies only where, "because of some action on the defendant's part, the complainant was unaware that the cause of action existed."  Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994); see also Irwin v. Dep't of Veterans Affairs, 498 U.S.

89, 96 (1990) (footnote omitted) (equitable tolling permitted "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").  However, the doctrine is not limited to cases where fraudulent concealment is shown, and may also apply where certain "special circumstances" are present.  See Valdez v. United States, 518 F.3d 173, 183 (2d Cir. 2008) (citing Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 323 (2d Cir. 2004)); see also Canales v. Sullivan, 936 F.2d 755, 758 (2d Cir. 1991) ("[T]his court has rejected the position that equitable tolling is permissible only in misconduct cases . . . .").

In the context of a claim of fraudulent concealment, plaintiffs must show: (1) concealment of the alleged wrongdoing; and (2) plaintiffs failure to discover the facts giving rise to their claims despite their exercise of due diligence.  See Coveal v. Consumer Home Mortg., Inc., No. 04-cv-4755 (ILG), 2005 U.S. Dist. LEXIS 5003, at *11 (E.D.N.Y. Mar. 29, 2005) (citing State of New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988); City of Detroit v. Grinnell Corp., 495 F.2d 448, 460 (2d Cir. 1974), abrogated on different grounds by, Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000)).  Under the first prong, a plaintiff may show concealment "by showing either that the defendant took affirmative steps to prevent the plaintiffs' discovery of his claim or injury or that the wrong

itself was of such a nature as to be self-concealing."
Hendrickson, 840 F.2d at 1083.  Further, such a showing must be
made under the particularity requirements set forth in Federal
Rule of Civil Procedure 9(b) ("Rule 9(b)").  In re Merrill Lynch
Ltd. P'shps. Litig., 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997),
aff'd, 154 F.3d 56 (2d Cir. 1998) ("Courts have held that all
three elements of the fraudulent concealment doctrine are subject
to Fed. R. Civ. P. 9(b)'s particularity requirements.")
(collecting cases).

        Even "absent fraudulent concealment," however,
equitable tolling may apply in the presence of specific "special
circumstances" where "a reasonable plaintiff in the circumstances
would have been [un]aware of the existence of a cause of action."
See Veltri, 393 F.3d at 323; see also Valdez, 518 F.3d at 183
("The present case, too, involves a special circumstance that may
warrant equitable tolling even absent fraudulent concealment.").
Yet, while a plaintiff need not show fraudulent concealment in
the presence of certain "special circumstances," such a plaintiff
must still demonstrate due diligence in order to invoke the
equitable tolling doctrine.  See Valdez, 518 F.3d at 183
("Nevertheless, [in the context of special circumstances] . . . a
plaintiff, who would otherwise be entitled to rely on equitable
tolling . . . could forfeit that right if he failed to exercise
due diligence to the prejudice of the defendant.").

### b. The R&R's Rejection of Equitable Tolling in this Case and Plaintiffs' Objections

The R&R relied on three grounds to reject the application of equitable tolling to plaintiffs' claims. First, noting that Judge Bianco had granted plaintiffs specific and limited leave to plead "*additional* allegations demonstrating concealment" or "the self-concealing nature of the wrongful actions of the 1997-1 Trust," Judge Reyes found that plaintiffs had failed to do so. (R&R at 16 (<u>citing</u> 2008 Order at 9)(emphasis added)) Rather, Judge Reyes found that the second amended complaint "contain[ed] no *new* or *additional* allegations of concealment or self-concealing conduct" and instead, merely reiterated in slightly altered form the "same allegations and arguments" previously advanced by plaintiffs in their moving papers on the prior motions to dismiss and rejected then by Judge Bianco as a basis for equitable tolling. (R&R at 16-17 (emphasis in original).) Judge Reyes thus concluded that having failed to plead any new allegations providing a basis for equitable tolling, plaintiffs' attempt to "relitigate" an issue previously decided must be rejected. (<u>Id.</u> at 17.) Second, Judge Reyes found unavailing plaintiffs' efforts to invoke equitable tolling even absent a showing of fraudulent concealment by relying on <u>Valdez</u>, 518 F.3d 173 and <u>Veltri</u>, 393 F.3d 318. Judge Reyes noted that both <u>Valdez</u> and <u>Veltri</u> were "limited to their facts" and decided on "narrow issues" and, moreover, that plaintiffs had

"failed to plead the existence of any . . . special circumstances" of the type found in Valdez and Veltri which warranted the application of equitable tolling even absent fraudulent concealment. (R&R at 17-18.) Third, Judge Reyes found that plaintiffs failed to plead facts demonstrating the exercise of the due diligence necessary to avoid forfeiture of any equitable tolling they might otherwise have been entitled to. (Id. at 19 (citing Veltri, 393 F.3d at 326).)

Plaintiffs object to Judge Reyes's analysis and conclusions on several grounds. First, plaintiffs claim that Judge Bianco's 2008 Order expressly provided plaintiffs an opportunity to include in an amended pleading the allegations detailed in their motion papers on the motion to dismiss. (Pls. Obj. at 23-29.) As such, plaintiffs assert that the 2008 Order "provides absolutely no basis" for the finding that the sufficiency of the allegations in the second amended complaint had previously been rejected by Judge Bianco. (Id. at 26.) Second, plaintiffs impliedly disclaim reliance on Valdez and Veltri and instead assert that the second amended complaint's allegations of both active concealment and the self-concealing nature of the defendants' conduct suffice to warrant the application of equitable tolling and obviate any need for additional allegations of "special circumstances." (Id. at 26-28.) Finally, plaintiffs object to the R&R's finding that

plaintiffs forfeited any potential right to equitable tolling by failing to discharge their duty to investigate, insisting instead that such a duty did not arise here because "the circumstances would [not have] suggest[ed] to [a person] of ordinary intelligence [] the probability that she has been defrauded." (Id. at 28-29 (quoting Shah v. Meeker 435 F.3d 244, 249 (2d Cir. 2006).)  Moreover, plaintiffs assert that the question of diligence should be reserved for the jury.  (Pls. Obj. at 29.)

### c. Application

The "convoluted" procedural history here somewhat obscures the analysis of the sufficiency of the pleadings as plaintiffs' first objection essentially turns on this court's interpretation of Judge Reyes's interpretation of Judge Bianco's 2008 Order reviewing Judge Pollak's 2008 R&R.  Additionally, because the parties essentially agree that under the case law, no "special circumstances" are required to invoke equitable tolling where a plaintiff has adequately alleged defendants' affirmative concealment or the self-concealing nature of the wrongdoing, plaintiffs' second objection turns on the question of whether plaintiffs have sufficiently alleged fraudulent concealment.

Setting aside plaintiffs' first objection and the question of which specific allegations of concealment were previously rejected by Judge Bianco as insufficient to invoke equitable tolling (see 2008 Order at 9), and regardless of

whether – as disputed by the parties – plaintiffs have sufficiently alleged fraudulent concealment under Rule 9(b), upon a *de novo* review, this court concludes that equitable tolling cannot apply to save Warters's and Taylor's FDCPA claims because plaintiffs cannot demonstrate due diligence.  See Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997) ("a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment'"); see also Valdez, 518 F.3d at 183 (even absent fraudulent concealment, plaintiff could forfeit a potential right to equitable tolling "if he failed to exercise due diligence").

### i. Inquiry Notice and Absence of Due Diligence

Plaintiffs apparently acknowledge that they have not alleged any due diligence, and instead claim that no duty to investigate arose here because the plaintiffs were not on inquiry notice of defendants' allegedly wrongful conduct.  (See Pls. Obj. at 28-29.)  Further, plaintiffs contend that even if plaintiffs were on inquiry notice of the wrongful conduct, the question of whether plaintiffs exercised due diligence should be decided by a jury.  (Id. at 29.)  Yet having failed to allege fraud which might excuse the plaintiffs' duty of due diligence, under either theory for invoking equitable tolling, plaintiffs must allege their due diligence.  This they fail to do and there is no need to await a fact finder to conclude so.

First, plaintiffs' suggestion that no duty of due

diligence applied to them is incorrect. As the R&R correctly found, and what plaintiffs continue to ignore, is that the standard that they seek to apply to relieve themselves of the due diligence obligation applies to cases sounding in fraud. (See R&R at 19-20.) Here, however, plaintiffs do not plead fraud (see id. at 19 (citing Second Am. Compl. at ¶¶ 77-144)), and accordingly, plaintiffs have done nothing to extinguish the requirement of alleging due diligence in order to invoke equitable tolling.

Second, and moreover, even assuming the allegations of the second amended complaint to be true, those allegations indicate that plaintiffs had inquiry, if not actual, notice of their claims and nevertheless failed to exercise due diligence to investigate those claims. As Judge Pollak originally found in the 2008 R&R and Judge Bianco accepted, as a matter of law, the filing of the Binson action placed plaintiffs on inquiry notice of their potential claims. (See 2008 R&R at 29-31 (citing Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 381 F. Supp. 2d 334, 337-39 (S.D.N.Y.) ("It is well settled that the filing of a lawsuit by private parties puts plaintiffs with identical claims on notice of their potential claims.").) Thus, although Taylor's and Warters's claims had not accrued as of the date the Binson action was filed, the filing of that action gave plaintiffs inquiry notice of the claims as a matter of law as of the latest

dates that their claims accrued – December 10, 2003 for Taylor and May 19, 2004 for Warters (see Pl. Opp. at 4, 6, 15)[4] – both dates outside the limitations period.[5]

Finally, while some courts have found that questions of a plaintiffs' due diligence should be resolved by a jury, certainly, "if facts in the complaint conclusively indicate that a plaintiff did or should have had knowledge of the violation within the statue of limitations, even when read in the light most favorable to the plaintiff, the limitations period should not be tolled." In re Natural Gas Commodity Litig., 337 F. Supp. 2d 498, 514 (S.D.N.Y. 2004) (citing In re Sumimoto Copper Litig., 120 F. Supp. 2d 328, 346-47 (S.D.N.Y. 2000) and Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1408-09 (S.D.N.Y. 1996)). Here, no inferences need be drawn to determine that, as a matter of law, the Binson action placed plaintiffs on inquiry notice of their potential claims as of the dates that the claims accrued. Nonetheless, plaintiffs have not alleged that they exercised due diligence. Indeed, plaintiffs make no allegations

---

[4]    Although in their objections plaintiffs urge the court to construe certain post-May 19, 2004 alleged communications and payoffs as actionable debt collection activity under the FDCPA, as discussed *supra*, even had the court converted the motions into ones for summary judgment, the court would not have found such activity actionable. Thus, the court adopts the accrual dates alleged in the second amended complaint and originally set forth by the parties on the motions to dismiss. (see, e.g., Pl. Opp. at 9-10; see also Second Am. Compl. ¶¶ 98; 127.)

[5]    Because this action commenced on May 20, 2005, any alleged FDCPA violation that occurred prior to May 20, 2004 is time-barred. See 15 U.S.C. § 1692k(d) (requiring that FDCPA claims be brought "within one year from the date on which the violation occurs").

of any specific inquiries of defendants let alone detail when
such inquiries were made, to whom, regarding what, and with what
response.[6]  Thus, plaintiffs have plainly failed to sufficiently
plead that as a result of defendants' active concealment or the
self-concealing nature of the wrongdoing, that plaintiffs could
not, through reasonable diligence, have discovered the alleged
wrongdoing.  See In re Merrill Lynch Ltd. P'ships. Litig., 154
F.3d 56, 60 (2d Cir. 1998) (affirming district court's rejection
of equitable tolling under doctrine of fraudulent concealment
where investors failed to plead adequately any due diligence).

        The public record and allegations in the second amended
complaint thus conclusively establish that plaintiffs cannot meet
the second prong required to invoke equitable tolling in that
plaintiffs did not allege that they remained ignorant of their
claims despite the exercise of due diligence.  See Coveal, 2005
U.S. Dist. LEXIS at *12.  As such, there is no need to await a
finder of fact to determine that the allegations in the second
amended complaint are insufficient to invoke equitable tolling.
See In re Merrill Lynch, 154 F.3d at 60 (finding that the
question of inquiry notice need not be left to a finder of fact)

---

[6]     Moreover, and as noted by the Trust defendants, although plaintiffs
assert that absent a foreclosure judgment the defendants could not lawfully
collect any amounts exceeding the principal and interest on the liens,
plaintiffs have nowhere disputed that the public record provided inquiry
notice to plaintiffs that they were being charged in excess of those amounts.
(See Trust Def. Mot. at 9-10; see also Trust Mem. at 9.)  Yet plaintiffs do
not allege that they conducted any due diligence to determine what charges
comprised the amounts exceeding the principal and interest owing.

(citation omitted); see also Salinger, 934 F. Supp. at 1408 ("The question of constructive knowledge and inquiry notice may be one for the trier of fact and therefore ill-suited for determination on a motion to dismiss . . . . Nonetheless, the test is an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves.") Accordingly, equitable tolling cannot toll the limitations period for Warters's and Taylor's FDCPA claims. The court therefore adopts the R&R's finding that Warters's FDCPA claim is untimely and must be dismissed.

## 2. No Objections Regarding Inapplicability of American Pipe Tolling and Treatment of Plaintiffs' Additional Federal Claims and Various State Law Claims

Neither party has objected to the R&R's recommendations regarding the inapplicability of American Pipe tolling to Taylor's claims, the need to reject plaintiffs' attempted assertion of additional federal statutory claims and the appropriate treatment of plaintiffs' various state law claims. Thus where, as here, neither party has objected to a portion of a report and recommendation, the court "need only satisfy itself that that there is no clear error on the face of the record." Urena, 160 F. Supp. 2d at 609-10 (quoting Nelson, 618 F. Supp. at 1189).

### a. Inapplicability of <u>American Pipe</u> Tolling to Taylor's FDCPA Claim

Judge Reyes found that plaintiff Taylor failed to re-plead facts sufficient to establish her membership in the <u>Binson</u> class and that she accordingly cannot benefit from <u>American Pipe</u> tolling on her FDCPA claim.[7] (R&R at 11.) Specifically, Judge Reyes found that even assuming, *arguendo*, that Taylor established her eligibility for membership in the <u>Binson</u> class under the first class criteria by showing her "beneficial ownership" of New York City property during the <u>Binson</u> class period, Taylor continued to lack standing under the second class criteria because "the misconduct she alleges as the basis of her FDCPA claim occurred *subsequent* to the filing of <u>Binson</u> on July 22, 2003." (R&R at 12 (emphasis in original).)

Having reviewed the record, the court concurs with Judge Reyes's straightforward conclusion that <u>American Pipe</u> tolling does not operate to save Taylor's untimely FDCPA claim. Accordingly, having already concluded that equitable tolling does not operate to save Taylor's claim, the court adopts the R&R's finding that Taylor's FDCPA claim is time-barred and must be dismissed.

---

[7]    Notably, Taylor herself appears to have abandoned the argument that <u>American Pipe</u> tolling should apply to her FDCPA claim by failing to argue for its application either in her opposition brief to the instant motions to dismiss or in her objections to the R&R.

### b. Plaintiffs' Attempted Assertion of FDCPA claims Against All Named Defendants

Without authorization from the court, plaintiffs attempted to assert FDCPA claims against all named defendants in their second amended complaint. (See R&R at 32-33 (citing Second Am. Compl. at 22).) Specifically, plaintiffs sought to add additional FDCPA claims against defendants which were never parties to the Binson action, namely, the 1996-1 Trust, the 1997-1 Trust, and the 1999-1 Trust. (See id.) However, the R&R correctly found that to the extent that plaintiffs seek to assert additional federal statutory claims in the second amended complaint, these claims must be dismissed. (See id.) Accordingly, the court adopts this portion of the R&R for the reasons set forth in the R&R. (See id.)

### c. Treatment of Plaintiffs' Various State Law Claims

With respect to the treatment of plaintiffs' state law claims, neither party has objected to the R&R's recommendations that this court: (i) dismiss plaintiff Boyd's usury claim under New York General Obligation Law Section 5-501, and (ii) retain jurisdiction over plaintiffs' remaining state law claims for unjust enrichment, breach of contract, and New York General Business Law Section 349 claims of misleading and deceptive practices. (See 2008 R&R at 38-39.)

The court finds no clear error in Judge Reyes's

recommendations regarding plaintiffs' state law claims and therefore adopts the recommendations in their entirety and for the reasons stated in the R&R.  See Urena, 160 F. Supp. 2d at 609-10.

## CONCLUSION

For the reasons set forth above, Judge Reyes's well-reasoned and thorough Report and Recommendation is adopted as set forth above and plaintiffs' objections are denied.  Therefore, defendants' motions to dismiss are granted with respect to (i) plaintiffs Taylor's and Warters's FDCPA claims, and (ii) Boyd's usury clam under New York General Obligations Law Section 5-501, and these claims are therefore dismissed.  Additionally, to the extent plaintiffs attempt to assert FDCPA claims by all plaintiffs against named defendants which were never parties to the Binson action, specifically, the 1996-1 Trust, the 1997-1 Trust, and the 1999-1 Trust, the FDCPA claims against those defendants are dismissed.  Each of these claims is dismissed with prejudice and without leave to replead.[8]

---

[8]    Plaintiffs have explicitly disclaimed any desire for further leave to re-plead.  (See Pls. Obj. at 10 n.7 ("In fact, the only 'good cause' requirement relating to an attempt to amend a complaint – which plaintiffs are not seeking here . . . .").  Absent any request to re-plead or any indication of what additional allegations could make the claims viable, the court declines to grant further leave to re-plead *sua sponte.*  See, e.g., Horoshko v. Chase Manhattan Mortgage Co., 373 F.3d 248, 249 (2d Cir. 2004) (per curiam) (rejecting as "frivolous" claim that district court abused its discretion in not permitting an amendment that was never requested and finding that absent any request for leave to amend and "'some indication as to what appellants might add to their complaint in order to make it viable,'" court had "no

Defendants' motions are denied in all other respects. The court will thus proceed with plaintiffs' remaining federal claims, namely, Boyd's and Jones's FDCPA claims against only the JER defendants and the 1998-1 Trust, and retain jurisdiction over all plaintiffs' state law claims against all named defendants for unjust enrichment, breach of contract, and misleading and deceptive practices under New York General Business Law Section 349.

By February 11, 2011, the parties shall file a joint status report advising as to their settlement efforts to date and their proposed next steps.

**SO ORDERED.**

Dated:   February 2, 2011
         Brooklyn, New York

                                   _____   /s/   _____
                                   **Kiyo A. Matsumoto**
                                   United States District Judge

---

obligation to provide . . . leave to amend . . ., much less provide such leave *sua sponte*") (internal quotation omitted)).