**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JOAN GRANT BOYD, *et al.*,

                Plaintiffs,

        - against -

J.E. ROBERT CO., *et al.*,

                Defendants.
--------------------------------------------------------X

**REPORT & RECOMMENDATION**

05-CV-2455 (KAM) (RER)

**RAMON E. REYES, JR., United States Magistrate Judge:**

### TO THE HONORABLE KIYO A. MATSUMOTO,
### UNITED STATES DISTRICT JUDGE

Plaintiffs Joan Grant Boyd ("Boyd"), Randa Jones ("Jones"), Sybil Taylor ("Taylor"), and Tonya Warters ("Warters") (collectively, "Plaintiffs"), commenced this action on behalf of themselves and a putative class against Defendants J.E. Robert Co., Inc. and JER Revenue Services, LLC ("JER") (collectively, "JER Defendants"), and NYCTL 1996-1 Trust ("1996-1 Trust"), NYCTL 1997-1 Trust ("1997-1 Trust"), NYCTL 1998-1 Trust ("1998-1 Trust"), and NYCTL 1999-1 Trust ("1991-1 Trust") (collectively, "Trust Defendants"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and New York statutory and common law.

Before the Court are Defendants' respective motions for summary judgment. For the reasons set forth below, I respectfully recommend that Defendants' motions for summary judgment be granted in part and denied in part.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiffs were all homeowners subject to New York City ("the City") Tax Liens that secured amounts owed for real estate taxes, water and sewer charges, and other statutory charges. (JER Defs.' Stmt. of Material Facts Pursuant to Local Rule 56.1 dated 6/03/12 (Dkt. No. 227) ("JER 56.1 Stmt."), ¶ 3.) The City sold the Tax Liens to Trust Defendants, who in turn retained JER Revenue Services to assist with the collection of the amounts secured by the Tax Liens. (*See id.* ¶ 1.) In servicing the Tax Liens, JER managed collection efforts, accounted for taxes collected, maintained records, and retained outside counsel to foreclose upon the Tax Liens in New York Supreme Court. ( *Id.* ¶ 7.) JER Defendants entered into retainer agreements with outside counsel on behalf of Trust Defendants. ( *Id.* ¶¶ 66-67.) None of the Plaintiffs were parties to any of these retainer agreements. (JER 56.1 Stmt. ¶ 67; Pls.' Responses to Def. JER'S Rule 56.1 Stmt. dated 10/5/11 (Dkt. No. 235) ("Pls.' Responses to JER 56.1 Stmt."), ¶ 67.)

On behalf of Trust Defendants, outside counsel commenced actions in New York Supreme Court to foreclose on one or more Tax Liens against the following properties: (1) 480 Quincy Street, Brooklyn, New York (the "Jones Property")[2]; (2) 1459 Carroll Street, Brooklyn,

---

[1] The facts of this case are amply set forth in prior Report and Recommendations and Orders on Defendants' two separate motions to dismiss, and I repeat them here only to the extent necessary for the analysis below. (*See* Order Adopting Report and Recommendation dated 2/2/11 (Dkt. No. 191)("2/2/11 Order"); Report and Recommendation dated 3/31/10 (Dkt. No. 183)("3/31/10 R&R"); Order dated 9/24/08 (Dkt. No. 70); Report and Recommendation dated 3/20/08 (Dkt. No. 63); Report and Recommendation dated 6/27/06 (*Binson et al v. J.E. Robert Co., Inc. et al,* No. 03-CV-3562 (JG) (CLP), Dkt. No. 130), adopted by, Order dated 11/07/06.)

[2] As to the Jones Property, the foreclosure complaint identifies Irene Sterling, Lincoln Savings Bank, "John Doe," and "Jane Doe," among others, as defendants. (Decl. of Paul Grobman in Opp'n to Defs.' Mots. for Summ. J. dated 10/3/11 (Dkt. No. 233) ("Grobman Decl."), Exh. H.) Defendants allege that Plaintiff Jones was not served as a defendant with the original foreclosure complaint. (JER 56.1 Stmt. ¶ 36). Plaintiffs, conversely, allege that Jones

New York (the "Boyd Property")[3]; (3) 128-39 Inwood Street, Queens, New York (the "Warters Property"); (4) 1152 Wheeler Avenue, Bronx, New York (the "Taylor Property"). (Grobman Decl., Exh. H ("Jones Compl."); Exh. EE ("Boyd Compl."); Exh. SS ("Warters Compl."); Exh. JJJ ("Taylor Compl.").) The complaint in the action to foreclose on the Jones Property sought the sale of property to recover amounts "due on the Tax Lien, with interest to the time of such payment, together with costs, allowances and disbursements of this action, including attorneys' fees, and together with the expenses of the sale . . . . " (Jones Compl., at JER2 07098.) The complaints as to the Boyd, Warters, and Taylor Properties contained nearly identical language. (Boyd Compl., at 7; Warters Compl., at JER2 07289; Taylor Compl., at JER2 10432.)

In their responses to Defendants' interrogatories, all of the Plaintiffs, except for Boyd, indicated that they had retained counsel to represent them "with respect to the relevant tax lien or any foreclosure with respect thereto." (JER 56.1 Stmt., Exh. 4 at No. 5.) Boyd testified at her deposition that attorney Bennett had represented her in the past. (JER 56.1 Stmt., Exh. 2 ("Boyd Dep."), at 53:12-16.) Plaintiffs now seek to qualify the extent to which they were represented by counsel. (*See, e.g.*, Pls.' Responses to JER 56.1 Stmt. ¶¶ 30-32 (Boyd), 38 (Jones), 43 (Taylor), 50 (Warters).) As relevant here, Jones admits that attorney William Simms represented her only in connection with refinancing her home. (*Id.* ¶ 38.) Boyd also admits that attorney Michael

---

was served with the complaint on July 23, 2002, and sued therein as "Jane Doe #1." (Pls.' Responses to JER 56.1 Stmt. ¶ 36 (citing Grobman Decl., Exh. I ("Affidavit of Service")). Plaintiffs further allege that Jones became record owner of the Jones Property on October 31, 2002. (Grobman Decl. ¶ 24 (citing *id.,*Exh. F ("Jones Indenture")).)

[3] The Boyd property was jointly owned by former plaintiff Thomas Boyd and Ms. Boyd (*see* Grobman Decl., Exh. CC ("Boyd Indenture"), at JER2 00332; Exh. DD ("Boyd Title Report"), at JER2 00321.)

Bennett represented her in refinancing her home, which transaction required the payoff of the Tax Lien. (*Id.* ¶¶ 30-32.)

In general, all of the Plaintiffs, or their counsel were able to inquire as to the amounts necessary to discharge the Tax Liens. (JER 56.1 Stmt. ¶ 60.) In fact, each Plaintiff did submit such an inquiry, to which Defendants responded with payoff quotes. (*See* JER 56.1 Stmt. ¶ 62; Pls.' Responses to JER 56.1 Stmt. ¶ 60.)

As to their communications with JER, Jones testified at her deposition that she does not recall talking to, or receiving correspondence from, anyone affiliated with JER Defendants. (JER 56.1 Stmt., Exh. 3 ("Jones Dep."), at 18:12-19:11.) JER alleges that it communicated only with attorney Simms and Home Abstract regarding the payoff for the Jones Property. (JER Stmt. 56.1 ¶ 40.) Plaintiffs maintain, however, that JER records reflect that letters may have been sent to Jones directly. (Pls.' Responses to JER 56.1 Stmt. ¶ 37; Grobman Decl. ¶ 23 (citing Exh. C ("Jones Communication History"), at JER2 00279, lines (11)-(20); *see also id.* ¶ 22 (citing Exh. C, at JER2 0281, lines (94), (99).) The evidence reflects that, on one or more occasions, Simms and Homes Abstract contacted JER on behalf of Jones for a payoff quote, and JER responded by faxing a quote to them.[4] (Grobman Decl., Exh K ("Payoff Quote Request Fax dated 10/24/02"); *see also* Jones Communication History, at JER2 00282, lines (162)-(166), (183) (10/11/02 entry stating "Faxed POQ [ ] to Michell @ Simms WB/KLT).)[5]

---

[4] Although not expressly cited by Plaintiffs, a review of the Jones Communication History indicates that JER also faxed a payoff quote to attorney William Simms, at his request, on 07/17/02. (Jones Communication History, at JER2 00281, lines (126)-(130), (135)).

[5] The record does not contain a copy of the purported 10/11/02 payoff quote prepared for Jones.

Additionally, Plaintiffs allege that JER may have sent numerous letters to Boyd. (Grobman Decl. ¶ 64 (citing Exh. AA ("Thomas Boyd Communication History"), at JER2 00384, lines (013)-(016), (21), (26)-(30); JER2 00385, lines (43), (46), (56); JER2 00386, line (114).) Plaintiffs also cite to JER records indicating that a payoff quote for the Boyd Property was requested on 05/20/02,[6] and in response, JER provided a payoff quote. (Thomas Boyd Communication History, at JER2 00385, lines (54)-(62); Grobman Decl., Exh. FF ("5/20/02 Payoff Quote").)[7] Former plaintiff Thomas Boyd entered into a Forbearance Agreement with the Bank of New York, as Trustee and as Collateral Agent and Custodian of NYCTL 1998-1 Trust by its servicer, on June 12, 2002. (JER 56.1 Stmt. ¶ 24; Grobman Decl., Exh. GG ("Forbearance Agreement").) Ms. Boyd was not a signatory of the Forbearance Agreement. (JER 56.1 Stmt. ¶ 25.) On April 4, 2003, attorney Michael Bennett, stating that the Boyds retained his office to represent them in connection to refinancing the Boyd Property, requested an "updated pay-off quote" for the Boyd Property. (*See* Grobman Decl, Exh. HH ("4/4/03 Bennett Request").) According to JER records, a payoff quote was faxed to attorney Michael Bennett. (*See* Thomas Boyd Communication History, at JER2 00390, line (329) ("Fax POQ [ ] to Michael Bennett - WB/KLT").) While the record does not contain this payoff quote, it does contain an "Officer's Certificate Check List," which reflects the amount paid as $8,544.93. (Grobman Decl., Exh. II.)

---

[6] Plaintiffs assert that the Boyds requested the 5/20/02 Payoff Quote. (Grobman Decl. ¶ 67.)

[7] Although not expressly cited by Plaintiffs, a review of the Thomas Boyd Communication History indicates that JER faxed payoff quotes in response to inquires submitted by different parties. (*See, e.g.*, *id.*, at JER2 00387, lines (179)-(185), (194) ("08-12-02 Faxed POQ [ ] OK WB/YA"); JER2 00389, lines (273)-(277), (288) ("03-21-03 Fax POQ [ ] to Fran @ Vintage WB/ KLT").) Of note, JER faxed a payoff quote on 3/20/03 in response to a request by Sibogile Boyd. (*See id.*, JER2 00389, lines (256)-(259), (271).)

In general, the payoff quotes identified the "TAX LIEN BALANCE" as of a certain payoff date, the "LEGAL FEES AND COSTS (estimated)," and the "TOTAL DUE." (*See, e.g.*, Grobman Decl., Exh. FF ("5/20/02 Boyd Payoff Quote"); Exh. VV ("06/22/04 Warters Payoff Quote"); Exh. PPP ("11/21/03 Taylor Payoff Quote").) The payoff quotes included the following language: "If a foreclosure has already been commenced, an estimate of legal fees and costs is included below. Actual legal fees and costs may be different than the estimate." *Id.*

Plaintiffs do not dispute any principal amounts alleged to be due and owing under the Tax Liens, (JER 56.1 Stmt. ¶ 19), but instead challenge the propriety of the attorney's fees and costs charged to them (*see* Second Am. Compl. dated 11/12/08 (Dkt. No.83), ¶ 2). The estimated legal fees included the fees and costs billed to date, as well as the legal expenses projected to be due as of the anticipated payoff date. (*See* JER 56.1 Stmt. ¶ 62; Pls.' Responses to JER 56.1 Stmt. ¶ 62.)

Thus, each Plaintiff paid the amounts identified in the payoff letters to satisfy the Tax Liens. (JER 56.1 Stmt. ¶ 17; Pls.' Responses to JER 56.1 Stmt. ¶17.) As a result of the redemption, the foreclosure actions were discontinued. (JER 56.1 Stmt. ¶ 17; Pls.' Responses to JER 56.1 Stmt. ¶ 17.) Defendants later issued refunds to Plaintiffs for overpayments. (JER 56.1 Stmt. ¶ 62; Pls.' Responses to JER 56.1 Stmt. ¶ 62.) Specifically, Jones received a $295.00 refund sent to attorney William K. Simms, (Grobman Decl.*,* Exh. W); former plaintiff Thomas Boyd received a $663.85 refund sent to Vintage Abstract, (*id.*, Exh. RR); Warters received a $5,250.21 refund sent to attorney Charles Cipolla, (*id.*, Exh. CCC); and Taylor received a $2,382.86 refund sent to attorney Jay Bialek, (*id.*, Exh. XXX).

After extensive motion practice, Plaintiffs filed their Second Amended Complaint, which now governs this action subject to Your Honor's 2/2/11 Order on Defendants' renewed motions to dismiss certain claims. Now before the Court are Defendants' respective motions for summary judgment on Plaintiffs Jones' and Boyd's claims against the 1998-1 Trust and JER Defendants[8] for alleged violations of §§ 1962e and 1962f of the FDCPA, and all of the Plaintiffs' state law claims against Defendants under § 349 of the New York General Business Law ("GBL § 349"), the theory of unjust enrichment, and common law breach of contract. (Notice of Motion for Summ. J. by Trust Defs. dated 06/03/11 (Dkt. No. 219); Mot. for Summ. J. by JER Defs. dated 06/03/11 (Dkt. No. 226).)

## DISCUSSION

## I. Applicable Standards

### A. Summary Judgment

The standards for summary judgment are well established. The party moving for summary judgment has the burden to demonstrate that: (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact is one that "might affect the outcome of the suit under the governing law" and that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). In determining whether

---

[8] By the 2/2/11 Order, Your Honor dismissed Plaintiffs claims against the 1996-1 Trust, the 1997-1 Trust, and the 1999-1 Trust. (*Id.* at 31.) As such, FDCPA claims remain as to the 1998-1 Trust and JER Defendants only. (*Id.* at 32.)

summary judgment is warranted, "[t]he Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)). The non-movant cannot create a genuine dispute of material fact by "rely[ing] on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Cushing v. Morning Pride, Mfg., L.L.C.*, No. 05-CV-3612 (DRH), 2008 WL 283772, at *10 (E.D.N.Y. Jan. 30, 2008) (citation and internal quotation marks omitted).

B. FDCPA

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, the FDCPA seeks to "(1) ensure the protection of all consumers, even the naive and the trusting, against deceptive collection practices, and (2) protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)). The Second Circuit reviews claims of FDCPA violations "objectively from the viewpoint of the 'least sophisticated consumer.'" *Gutierrez v. GC Servs. L.P.*, No. 09-CV-4606 (JBW), 2010 WL 3417842, at *2 (E.D.N.Y. Aug. 27, 2010) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998)). Nonetheless, "[e]ven in 'crafting a norm that protects the naive and the credulous,'

8

[the Second Circuit has] carefully preserved the concept of reasonableness." *Jacobson v. Healthcare Fin. Servs, Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon*, 988 F.2d at 1319.) Additionally, the Second Circuit has recognized that it "may decline to interpret the FDCPA in a manner that would thwart the obvious purpose of the statute." *Id.* (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998) (internal quotation marks omitted)).

In their summary judgment motions, Defendants raise a host of challenges that dispute both the applicability of the FDCPA and the propriety of Plaintiffs' claims of substantive violations of the same. For purposes of these motions, it unnecessary to address all of Defendants' claims, because even assuming that the FDCPA applies, Defendants have demonstrated that, as a matter of law, the evidence fails to establish that they violated the provisions at issue.

## II. Plaintiffs Jones' and Boyd's FDCPA § 1692e Claims Should Be Dismissed

In their Second Amended Complaint, Plaintiffs claim that Defendants "*attempted to collect* amounts for attorneys' fees, so-called Debt Cancellation or Discontinuance Fees, service of process fees and other costs and expenses from plaintiffs . . . *which were not owed, in violation of §1692e* of the FDCPA." (Second Am. Compl. ¶ 147 (emphasis added).) Section 1692e prohibits "false, deceptive, or misleading" communications from debt collectors, whether written or oral, "in connection with the collection of any debt." "Without limiting the general application of the foregoing," § 1692e includes a list of sixteen (16) prohibited practices that constitute a violation of that section. The record is unclear as to which of these subsections Plaintiffs contend Defendants violated. Defendants suggest the applicability of subsections (2) and (10). (JER Mem. of Law in Supp. of Defs. JER Revenue Services LLC's and J.E. Robert

Co., Inc.'s Mot. for Summ. J. dated June 3, 2011 (Dkt. No. 232) ("JER Mem.").)  Subsection (2) prohibits, in relevant part, "the false representation of . . . the character, amount, or legal status of any debt" while subsection (10) prohibits "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

A.    Plaintiffs Have Effectively Abandoned Their FDCPA § 1692e Claims

Defendants' motion papers challenge Plaintiffs' § 1962e claims directly.  For example, JER Defendants state at the outset of their legal memorandum that they challenge "the FDCPA claims on the assumption that they are directed to 15 U.S.C. § 1692e(2), § 1692e(10) . . . ."  (JER Mem. at 8.)  Similarly, in their introduction, Trust Defendants summarize Plaintiffs Jones' and Boyd's claims – "[Plaintiffs] claim that defendants violated § 1692e by attempting to collect monies that were not actually due and owing . . ." – and argue that Plaintiffs' "FDCPA claims fail at all levels."  (Defs. 1996-1 Trust, 1997-1 Trust, 1998-1 Trust, and 1999-1 Trust's Mem. of Law in Supp. of Their Mot. for J. Pursuant to R. 56 of the Fed. R. of Civ. Pro. dated 6/03/11 (Dkt. No. 224) ("Trust Defs.' Mem."), at 13.)

Substantively, Defendants argue, *inter alia*, that any FDCPA claims predicated upon § 1692e fail because the purportedly misleading communications – the payoff quotes and forbearance agreement [9] – were directed to Plaintiffs' attorneys, and therefore they are not

_____

[9] It is not entirely clear whether Plaintiffs allege that the Forbearance Agreement between Thomas Boyd and JER constitutes a violation of the FDCPA.  Although Plaintiffs appear to address only the payoff letters in their brief, (Pls.' Mem. at 13-15), they do allege elsewhere that the Forbearance Agreement "falsely represented that an unspecified amount of attorneys' fees and expenses were due and owing" and calculated attorneys' fees and costs together as the amounted allegedly owed.  (Grobman Decl. at ¶¶ 68,-69.)

covered by the FDCPA. (JER Mem. at 13.)[10] Plaintiffs, however, neither directly address Defendants' substantive challenges to their § 1692e claims, nor as a general matter defend the merits of such claims.

For example, Plaintiffs' first argument in their opposition brief ("Point I") attempts to justify Plaintiffs' claims under *§ 1692f*, and not § 1692e:

> BECAUSE PLAINTIFFS RANDA JONES AND JOAN GRANT BOYD WERE ASSESSED ATTORNEYS' FEES AND EXPENSES WHICH WERE NOT OWED, DEFENDANTS HAVE VIOLATED §1692(F)(1) OF THE FDCPA

(Pls.' Mem. in Opp'n to Defs' Mot. for Summ. J dated 10/5/11 (Dkt. No. 230) ("Pls.' Mem.") at 8.) Notably absent from the point heading and the body of their brief is a single argument that supports the viability of Plaintiffs' claims under § 1692e.

Indeed, in responding to Defendants' contention that any alleged false, deceptive or misleading communications are not covered by § 1692e because they were sent to Plaintiffs' attorneys, Plaintiffs distinguish § 1692e claims from those under § 1692f(1). The gravamen of Plaintiffs' argument in this regard is that the recipient of Defendants' demands for payment is "irrelevant" for purposes *§ 1692f(1)*:

> In contrast to the conflicting treatment of §1692e of the FDCPA when alleged misrepresentations are made to attorneys, every court which has addressed §1692f(1)'s separate prohibition against the 'collection' of improper fees or expenses has held that it is irrelevant whether the payoff demand was communicated through the consumer-plaintiff's attorney.

(*id.* at 14 (citation omitted); *see also id.* at 13-16.) Similarly, in response to Defendants' reliance on *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), Plaintiffs criticize Defendants for

---

[10] Although Trust Defendants do not expressly address the issue of whether communications directed at a consumer's attorney are actionable under the FDCPA, they state in their brief that they expressly adopt and incorporate by reference the facts and arguments proffered by JER Defendants.

"strech[ing] the *dicta* in *Kropelnicki* beyond the breaking point" because the court addressed claims brought under § 1692e(10), and not § 1692f(1). (*Id*. at 13.)

Plaintiffs similarly rely on *Allen v. Lasalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011), as a case that is "*on all fours with the facts of this case*." (*Id*. at 15 (emphasis added).) In *Allen*, the Third Circuit held that a payoff letter transmitted to a borrower's attorney is actionable under *§ 1692f(1)*, not § 1692e. *Id*. at 368. In an unauthorized *sur reply*, Plaintiffs again urge the Court to adopt the Third Circuit's interpretation that *§ 1692f(1)* governs demands for improper amounts directed to a consumer's attorney, in light of amicus briefing submitted by the Solicitor General, the Fair Trade Commission, and the Consumer Financial Protection Bureau at the invitation of the Supreme Court, which was then considering the *Allen* defendants' Petition for Writ of Certiorari. (Pls.' Notice of Supplemental Authority in Further Opp'n to Defs' Mots. for Summ. J. dated 02/02/12 (Dkt. No. 238.).)

In all, Plaintiffs' entire opposition brief is an attempt to justify their claims under § 1692f, not § 1692e. Plaintiffs have failed to respond directly to Defendants' challenges to their § 1692e claims, and have thus abandoned those claims. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified by*, 2003 WL 21781941 (E.D.N.Y. July 29, 2003) ("Federal Courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); (*see also* Defs. 1996-1 Trust, 1997-1 Trust, 1998-1 Trust, and 1999-1 Trust's Reply Mem. of Law in Further Supp. of Their Mot. for J. Pursuant to R. 56 of the Fed. R. Civ. Pro. dated 11/23/11 ("Trust Defs.' Reply"), at 2 n. 1 (arguing that Plaintiffs' failure to address

Defendants' purported liability for attempting to collect monies not actually due and owing under §§ 1692e and 1692f constitutes abandonment of such claims).)[11]

### B. Plaintiffs' FDCPA § 1692e Claims Lack Merit

Even if Your Honor finds that Plaintiffs have not abandoned their § 1692e claims, Defendants have establish that these claims fail on their merits. As noted above, § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Relying on the Second Circuit's dictum in *Kropelnicki,* Defendants argue that any alleged misrepresentations in the Payoff Quotes and Forbearance Agreement are not actionable under § 1692e because Defendants directed these communications to Plaintiffs' counsel. 290 F.3d at 127 ("A review of the FDCPA's purpose, as explained both in the statute and in the legislative history, and this Court's treatment of the FDCPA in other cases leads us to believe that alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA.") Defendants further argue that Your Honor previously adopted the Second Circuit's reasoning of *Kropelnicki* in this action, and accordingly, such reasoning is the law of the case.[12]

---

[11] Although Plaintiffs do cite in a footnote to authority from the Fourth and Seventh Circuits where the Circuits held that misrepresentations directed to a debtor's attorney can be actionable under § 1692e, (Pls.' Mem. at 14 n. 8), Plaintiffs have made no real attempts to argue that such case law applies here to save their § 1692e claims. Plaintiffs also cite to *Jerman v. Carlisle*, 130 S. Ct. 1605, 1609 (2010), where the Supreme Court addressed the applicability of the bona fide error defense, as applied to an attorney who included in a "Notice" to the complaint that the validity of the debt would be presumed unless disputed in writing, allegedly in violation of § 1692g. *Id.* at 1609-10. I do not find this case applicable here.

[12] In the 3/31/10 R&R to Your Honor, I reasoned that communications directed to Plaintiff Warters' attorney, and in response to her attorney's inquiries, could not form a basis of liability under § 1692e of the FDCPA. (*Id.* at 25-26.) Your Honor adopted the portion of the R&R that concluded "Warters's failure to allege or present evidence that any communications within the limitations period were initiated by the defendants warrants dismissal of her FDCPA

13

Although the language in *Kropelnicki* is dictum, it provides "strong support" for Defendants' position. *See Tromba v. M.R.S. Assoc., Inc.*, 323 F. Supp. 2d 424, 427 (E.D.N.Y. 2004); *see also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007) ("communications to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Act"); *but see Sayyed v. Wolproff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007) ("plainly, the FDCPA covers communications to a debtor's attorney").

Consistent with my 3/31/10 R&R, I again recommend that Your Honor apply the reasoning of *Kropelnicki* to find that, as a matter of law, communications directed to a debtor's attorney are not actionable under § 1692e of the FDCPA. *See also Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542 (S.D.N.Y. 2010) (adopting report and recommendation which held that a letter sent to a title company did not fall within the purview of the FDCPA); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775 (7th Cir. 2007) ("[A] representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable."). Thus, any communication directed to Plaintiffs' attorneys, including the purported 10/11/02 and 10/24/02 Payoff Quotes faxed to Simms and Homes as to the Jones property, and the 4/7/03 Payoff Quote faxed to attorney Michael Bennett as to the Boyd property, are not governed by the FDCPA.

Moreover, inasmuch as Plaintiffs allege FDCPA violations based on communications initiated by Plaintiffs and/or their attorneys, Your Honor previously adopted the portion of the 3/31/10 R&R that found such communications not actionable under the FDCPA. (2/02/11 Order at 15-16); *see Nichols v. Washington Mutual Bank*, No. 07-CV-3216 (JG), 2007 WL 4198252, at

---

claim." (2/2/11 Order at 16.)

*4-5 (E.D.N.Y Nov. 21, 20087); *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, No. 05-CV-0583, 2005 WL 2098068 at *2 (N.D.N.Y. Aug. 30, 2005).) The evidence reflects that the Boyds requested a payoff quote on May 20, 2002, and JER responded by letter with an estimate. This debtor-initiated communication resulted in Thomas Boyd executing a Forbearance Agreement with the 1998-1 Trust. Thus, in accordance with applicable case law and the law of the case, such debtor-initiated communications are not actionable under the FDCPA.

Finally, Plaintiffs' counsel identifies several instances where Defendants appeared to contact Plaintiffs Jones and Boyd directly.[13] Importantly, Plaintiffs do not allege that these communications resulted in substantive violations of the FDCPA. Instead, Plaintiffs claim that these alleged direct communications establish Plaintiff Jones' and Boyd's standing to bring FDCPA claims. (*See* Pls.' Mem. at 16; *see also* Grobman Decl. ¶ 22.) Moreover, and in any event, the record is devoid of any copies of these communications. Thus, even when drawing all inferences in favor of Plaintiffs, no reasonable fact finder could conclude that such communications amounted to violations of the FDCPA.

*    *    *

In light of the foregoing, I respectfully recommend that Your Honor grant summary judgment in favor of the 1998-1 Trust and JER Defendants as to Plaintiffs Jones' and Boyd's § 1692e claims.

---

[13] It bears noting that Plaintiff Jones testified at her deposition that she does not recall talking with, or receiving any correspondence from, anyone at JER or its affiliates. (Jones Dep. 18-19.)

**III.     1998-1 Trust and JER Defendants are Entitled to Summary Judgment on Plaintiffs Jones' and Boyd's FDCPA § 1692f(1)**

Plaintiffs Jones and Boyd argue that Defendants violated § 1692f by collecting attorney's fees, costs, and expenses that were not owed, imposing charges in violation of applicable law and/or relevant agreements, overcharging delinquent taxpayers, and failing to pay statutorily mandated interest on the refunds.  (Second Am. Compl. ¶¶ 148-150.)  Section 1692f provides that "unfair practices" proscribed by the FDCPA include:

> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*.

15 U.S.C. § 1692f(1) (emphasis added).  Defendants argue they did not violate § 1692f(1) because they collected attorney's fees and costs "permitted by law."

**A.     Defendants Attempted to Collect, And Did Collect, *Attorney's Fees* That Were "Permitted By Law"**

By way of background, Defendants commenced actions to foreclose on liens secured by the Jones and Boyd Properties.  In each of the foreclosure complaints, Defendants sought "costs, allowances and disbursements of this action, including attorneys' fees."  (*See, e.g.*, Jones Compl. at JER2 07098.)  At some point during the foreclosure actions, Plaintiffs and/or their attorneys requested a payoff quote of the amount necessary to pay off the Tax Lien.  JER responded by providing a quote that represented the total amount due as the sum of the projected Tax Lien balance and estimated attorney's fees and costs.  Plaintiffs redeemed their Tax Liens, and Defendants discontinued the foreclosure actions.

Defendants maintain that applicable law, and in particular § 11-335 of the New York City Administrative Code ("Administrative Code"), permits them to collect attorney's fees for maintaining foreclosure actions. Section 11-335, which is entitled "Foreclosure of tax liens," states that

> a plaintiff in an action to foreclose a tax lien shall recover reasonable attorney's fees for maintaining such action. Except as otherwise provided in this chapter an action to foreclose a tax lien shall be regulated by the provisions of the civil practice law and rules and by all other provisions of law, and rules of practice applicable to actions to foreclose mortgages on real property.

Based on the plain language of the statute, Defendants argue they were entitled to recover reasonable attorney's fees for the "mere maintenance of the foreclosure action." (Trust Defs' Mem. at 18; *see also* JER Mem. at 14-16.) Having established a statutory basis for recovery of attorney's fees, Defendants argue that they appropriately collected such fees pursuant to their agreements with Plaintiffs to settle the foreclosure proceedings.

Plaintiffs argue that § 11-335 does not authorize the recovery of attorney's fees and costs in the absence of a judgment of foreclosure awarding them to the "prevailing party." Plaintiffs argue that § 11-335 must be read narrowly because the statute marks a departure from the "American Rule," where each party bears their own attorney's fees and disbursements. *See Gottlieb v. Laub*, 82 N.Y.2d 457, 464 (1993); *Hamilton v. Menalon Realty, LLC*, 829 N.Y.S.2d 400, 402 (2d Dep't 2006). Even under the narrowest reading of the statute, however, there is no basis to impose a prerequisite of a judgment, as the statute's plain language states "[a] plaintiff in an action to foreclose a tax lien shall recover reasonable attorney's fees for maintaining such action." The statute speaks only of "maintaining" a foreclosure action as a basis for recovering

of attorney's fees. Accordingly, Plaintiff's argument that § 11-335 imposes entry of judgment as a precondition to recovery of attorney's fees is without merit.

Plaintiffs rely additionally on *Veech v. Sheeks*, 316 F.3d 690 (7th Cir. 2003) and *Shula v. Lawent,* 359 F.3d 489 (7th Cir. 2004) to argue that Defendants "had absolutely no right to claim legal expenses at issue as being due and owing under the FDCPA." (Pls.' Mem. at 18.) Plaintiffs' reliance on these cases is misplaced.

In *Veech*, the debt collector sent plaintiff a notice describing "the 'amount of the claimed debt' as 'Remaining principal balance $1,050.00; plus reasonable attorney fees as permitted by law, and costs if allowed by the court.'" 316 F.3d at 693. The Seventh Circuit found that the debt collector violated the FDCPA by incorrectly stating the amount of the debt, "but not because he specified indeterminate attorney's fees and court costs" as part of the demand for payment. *Id*. Instead, the Circuit's holding was based on its conclusion that the $1,050 balance improperly included *in the amount of the debt* legal fees that had not yet been awarded, "penalties that for FDCPA purposes should have been separated out from the debt." *Id.* Here, Plaintiffs do not contest the projected Tax Lien balance as reflected in the payoff quotes, but challenge the propriety of including estimated legal fees and costs in the letters. Unlike the debt collector in *Veech*, Defendants clearly separated the legal fees and costs from the amount of the debt itself, and explained the basis for the amounts due. The reasoning of *Veech* therefore does not apply here.

Equally unpersuasive is Plaintiffs' reliance on *Shula*. There the plaintiff claimed that the debt collector violated the FDCPA by sending a letter demanding $52.73 for court costs, claiming that plaintiff "owe[d] this amount to the defendants." *Shula*, 359 F.3d at 491 (internal quotation marks omitted.) Importantly, the debt collector sent the letter two years after the state

court had dismissed *sua sponte* the underlying foreclosure action as abandoned. *Id.* Judge Posner, writing for the court, reasoned that

> [i]f the court had awarded costs, they would have become a debt owed by Shula. But there was no award, nor any certainty that had the defendants moved for one they would have gotten it. Whether to award costs in such a case is a matter committed to the judge's discretion.

*Id.* (citation omitted). Unlike the parties in *Shula,* where the state court had already dismissed the action at the time of the alleged FDCPA violation, here Defendants attempted to collect, and did in fact collect, attorney's fees in the context of a live action in state court. Defendants expressly demanded attorney's fees and costs in each of the foreclosure complaints. Under these circumstances, each Plaintiff presumably weighed the risks and benefits of continuing the foreclosure proceeding, and reached an agreement with Defendants providing for the satisfaction of the Tax Lien, plus attorney's fees and costs, in exchange for discontinuance of the foreclosure action. Given these factual distinctions, Plaintiffs' reliance on *Shula* is misplaced.

Even if Your Honor were to find *Veech* and *Shula* applicable, Your Honor should nonetheless decline to apply the reasoning of these cases to the instant facts. Here, Plaintiffs agreed to pay attorney's fees, which were permitted under § 11-335, pursuant to their agreement with Defendants to settle the foreclosure actions against their properties. As Defendants highlight, parties to a litigation are able to fashion a settlement agreement as they see fit to resolve the controversy. *See Childs v. Levitt*, 543 N.Y.S.2d 51, 53 (1st Dep't 1989) ("[I]t has long been recognized that a stipulation need not be consistent with applicable statutes. Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights.") (citation and quotation marks omitted). Thus,

even if Plaintiffs were correct in arguing that entry of judgment is a prerequisite to recovery of

attorney's fees, nothing in the statute precludes parties from contracting around that requirement

in the context of settlement.[14]  *See Singer v. Pierce & Associates*, 383 F.3d 596, 598 (7th Cir.

2004) ("Had the foreclosure proceedings continued, [the defendants] could only have collected

attorneys' fees authorized by the court.  But [the plaintiff] avoided the foreclosure proceedings by

selling the property on her own and paying [the defendant] at closing the amount it had

calculated.").

Plaintiffs' entire argument, and the reasoning of *Shula*, is at odds with the pro-settlement

ideology of the federal courts.  *Carotek, Inc. v. Kobayashi Ventures, LLC*, No. 07-CV-11163

(NRB) (lead case), 2009 WL 2850760, at *3 (S.D.N.Y. Aug. 31, 2009) (citing *McDermott, Inc. v.

AmClyde*, 511 U.S. 202, 215 (1994) ("[P]ublic policy wisely encourages settlements . . . . ").  At

its core, Plaintiffs argue that before a defendant can assert claims for attorney's fees (or costs),

the FDCPA and relevant state statutes first require that he obtain a judgment concerning the

award of fees and costs.  Such a rule would practically eliminate voluntary settlements.  This is

true even if the creditor attempts to settle only the amount of the debt itself, and leaves the award

of attorney's fees and costs for resolution in court.  Since the award of these fees and costs is not,

at least in Plaintiffs' minds, authorized by law until judgment is entered, no creditor or debtor

could ever be able to settle that amount.  Nothing in the FDCPA's text or legislative history

---

[14] Plaintiffs argue the parties did not engage in a "bargained-for *quid pro quo* which resulted in a 'settlement' because Defendants were statutorily required to dismiss the foreclosure actions against the Jones and Boyd Properties after Plaintiffs' redemption.  (Pls.' Mem. at 39.) This argument is flawed.  As Trust Defendants note, the foreclosure plaintiffs (here, Defendants) forewent their right to pursue "any further claims they might have had concerning the enforcement of the tax lien and charges arising therefrom," including their statutory right to attorney's fees.  (Trust Defs.' Reply at 8.)  Defendants demanded attorney's fees and costs in their foreclosure complaint, and as part of their settlement with Plaintiffs, discontinued the entire foreclosure action and related litigation.

indicate an intent by Congress to either block such settlements or categorically prohibit creditors from recovering attorney's fees and costs which are otherwise "permitted by law." *See Fields v. Wilber Law Firm*, 383 F.3d 562, 564 (7th Cir. 2004) (rejecting plaintiffs' argument that a debt collector must seek court approval for a specific amount of attorney's fees because it "would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs. Plainly stated, the statute does not require such an extraordinary result."); *see also Carotek, Inc. v. Kobayashi Ventures, LLC*, 2009 WL 2850760, at *3 ("Federal courts are designed to resolve disputes, not encourage their creation.") (citation omitted).

In sum, Defendants entered into settlement agreements with Plaintiffs Jones and Boyd pursuant to which they collected amounts otherwise permitted by law. Having freely entered into such agreements, Plaintiffs cannot now be heard to complain about the terms and conditions of their settlements, or Defendants' actions in negotiating the terms and conditions. I therefore respectfully recommend that Your Honor grant summary judgment in favor of Defendants on Plaintiffs Jones' and Boyd's § 1692f claims.

B. Defendants Attempted to Collect, And Did Collect, *Costs* That Were "Permitted By Law"

In addition to attorney's fees, Defendants argue that § 11-335, which incorporates by reference the New York Civil Practice Law and Rules ("CPLR"), permits them to collect costs. *See, e.g.*, CPLR § 8301. The CPLR, in addition to authorizing specific costs and disbursements, includes broad language that allows recovery for "reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court." § 8301(12). Plaintiffs again argue that Defendants had no claim to costs and

disbursements under the CPLR absent entry of judgment in their favor. *See, e.g.*, CPLR § 8101 ("The party *in whose favor a judgment* is entered is entitled to costs in the action, unless otherwise provided by statute or unless the court determines that to so allow costs would not be equitable . . . .") (emphasis added); § 8301(a) ("A party *to whom costs are awarded* in an action or on appeal is entitled to tax his necessary disbursement.") (emphasis added). Plaintiffs further argue that the CPLR does not authorize recovery of many of the costs and disbursements for which Defendants charged them.

As set forth above in Point II.A, Plaintiffs' argument is unavailing. The parties agreed to pay attorney's fees and costs prior to entry of judgment. *See Oliphant v. Simboski*, No. Civ.A. 303CV2038SRU, 2005 WL 756505, at *3 (D. Conn. Mar. 31, 2005) (finding that state statutes authorizing attorney's fees and costs "as the court may determine" or "upon obtaining a judgment" do not "prohibit parties from agreeing to pay costs and attorneys' fees necessary for enforcement of a note, even when the enforcement does not result in a court judgment").[15] The CPLR, with its broad language, permits Defendants to collect the costs and disbursements that they sought. In short, nothing in the FDCPA precludes parties from agreeing to the terms and conditions of such recovery, as Plaintiffs and Defendants did here.

Thus, I respectfully recommend that Your Honor find that Defendants collected costs, disbursements, and expenses as permitted by law.

---

[15] In *Oliphant*, the note securing the mortgage provided that "in the event the lender required immediate payment in full, she would pay the costs and expenses of enforcing the note 'to the extent not prohibited by applicable law.'" 2005 WL 756505, at *1 (citation omitted). While in *Oliphant* the plaintiff agreed to pay costs and expenses per the contract underlying the debt (i.e. the note), I do not find this distinction to be material, because the contract authorized recovery of fees and costs in accordance with applicable law. Thus, relevant state law was the governing standard per the terms of the contract. Here too, Plaintiffs agreed to pay attorney's fees and costs permitted by law pursuant to the terms of a settlement.

C.     Defendants' Failure to Pay Interest on Overcharges Is Not Actionable Under The FDCPA

Plaintiffs argue that Defendants violated § 1692f of the FDCPA by failing to pay required statutory interest on overpayments.  In support of their argument, Plaintiffs highlight that the FDCPA is "a remedial statute which should be liberally construed" in favor of the consumer. (Pls.' Mem. at 38.)  Additionally, Plaintiffs argue that Defendants' failure to pay interest on overpayments is tantamount to an improper "collection" within the meaning of the law.  *Id.*

Plaintiffs site to no provision in the FDCPA that speaks to refunds of overpayments, and as a general matter, this Court is unpersuaded by Plaintiffs' attempt to analogize a failure to pay interest as an improper collection.  Even when construing the statute liberally, there is simply no basis to interpret § 1692f to govern refunds of excessive payments.  Nor does anything in the legislative history suggest that Congress intended the statute to govern anything but efforts to collect the debt in the first instance.  Specifically, the legislative history reflects a concern about "debt collection abuse" and a desire to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices."  S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696; 15 U.S.C. 1692(e).  This concern for abusive debt collection practices does not translate to refunds on overpayments.  Thus, absent support from the text of the statute and the legislative history, Plaintiffs' argument that they have a right to interest on the overpayments under the FDCPA should be rejected.

**III.     Defendants Are Entitled to Summary Judgment on Plaintiffs' GBL § 349 And Breach of Contract Claims**

     **A.     Plaintiffs Lack Standing to Enforce the Retainer Agreements Between JER Defendants and Outside Counsel**

Throughout their opposition papers, Plaintiffs argue that Defendants collected legal fees and costs that were "palpably improper" under Defendants' retainer agreements with outside counsel, as well as JER's Policy Manual. In this regard, Plaintiffs complain that outside counsel charged legal fees without fully completing the requisite milestone and/or billed at hourly rates higher than that agreed upon in the retainer agreements.[16] (*See, e.g.*, Grobman Decl. ¶¶ 47-51, 129). Additionally, Plaintiffs allege Defendants overcharged for expenses such as photocopying, title fees, and service of process, (*see, e.g.*, *id.* ¶¶ 52, 106-108), and inadequately described expenses as "Miscellaneous" or "Error Code," (*id.* ¶ 110). Finally, Plaintiffs allege that Defendants charged them for services not in fact rendered, as evinced by a comparison of JER's itemization of the legal fees with the court docket in a given case. (*See, e.g.*, *id.* ¶ 108-109.) Plaintiffs argue that "[b]ecause each of the fees and expenses described in this section breached the Retainer Agreements between defendants and their counsel, they could not be passed onto plaintiffs . . . ." (Pls.' Mem. at 32.)

Plaintiffs lack standing to bring a claim based on the content of the retainer agreements. Plaintiffs do not claim to be third-party beneficiaries, and in any event, have not presented

---

[16] Under the retainer agreements, foreclosure attorneys were required to charge fixed fees, payable "in parts as certain milestone in the foreclosure action were reached." (*See, e.g.*, Grobman Decl., Exh. E ("Buchanan Agreement"), at 232.) Additionally, outside counsel was permitted to charge an additional fee of $650 for obtaining an Order of Publication. (*See id.* at 233, 243.) If the delinquent taxpayer paid off the lien before a particular milestone was completed, the retainer agreement allowed foreclosure counsel to "be paid only for the portion of the fixed fee earned to date based upon the foreclosure milestone reach, if any, and then be paid hourly for the time spent working toward the next milestone." (*Id.* at 233.)

evidence that the contracts were intended for their immediate benefit. *See State of Cal. Pub. Emps' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 435 (2000) ("A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.") (citation and quotation marks omitted). Indeed, as Trust Defendants suggest, one is hard pressed to find "that the party being sued (here, the plaintiffs) was an intended beneficiary of the retainer agreement between JER (the adverse party in the underlying [foreclosure] litigation) and the very attorneys retained to sue plaintiffs." (Trust Mem. at 22.) Therefore, as a matter of law, Plaintiffs have no standing to challenge or enforce the terms of the contract. *See VAC Serv. Corp. v. Tech. Ins. Co., Inc.*, 853 N.Y.S.2d 577, 577 (2d Dep't 2008) (citations omitted).

Moreover, Plaintiffs do not expressly allege a direct cause of action as to the purported breaches of the retainer agreements, but simply argue that Defendants overcharged them for numerous fees and expenses. (Pls.' Mem. at 29.) Plaintiffs argue that, inasmuch as outside counsel charged fees and expenses in breach of the retainer agreements, Defendants could not collect those expenses from Plaintiffs. (*See id.* at 32.) Plaintiffs do not cite authority for this proposition; and moreover, such a claim is difficult to reconcile with well-established contract principles that non-parties do not have standing to enforce a contract, *supra*, and that parties to a contract may alter or waive the terms of a contract through their course of conduct, as the Defendants and their outside counsel have arguably done here. *See Ficus Invs., Inc. v. Private*

*Capital Mgmt., LLC*, 872 N.Y.S.2d 93, 100 (1st Dep't 2009) (citing *CT Chemicals (U.S.A.), Inc.*

*v. Vinmar Impex, Inc*, 597 N.Y.S.2d 284, 287 (1993); (*see also* Trusts Reply at 6 n 6.).

Furthermore, contrary to Plaintiffs' argument, proof of expenses charged in violation of

the retainer agreements, either because they were inadequately described or exceeded the

authorized amount, is not evidence of improper billing *as to Plaintiffs*. To hold otherwise would

implicitly allow Plaintiffs to enforce the terms of a contract of which they are neither a party nor

third party beneficiaries. While Plaintiffs may properly seek relief for that outside counsel did

not in fact perform, *infra*, evidence of overcharges pursuant to the retainer agreements, as a

general matter, does not establish a claim for relief.

B.       Defendants Are Entitled to Summary Judgment on Plaintiffs' GBL § 349 Claims

Defendants argue that Plaintiffs' failed to satisfy, as a matter of law, the elements of their

GBL § 349 claims of misleading and deceptive practices. Section 349 of the GBL prohibits

"[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service." To establish a claim under GBL § 349, the plaintiff must show: "(1)

that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a

'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw.*

*Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (citing *Oswego Laborers' Local 214 Pension Fund*

*v. Marine Midland Bank, N.A.("Oswego"),* 623 N.Y.S.2d 529, 532-33 (1995).

A plaintiff may satisfy the "consumer-oriented" element by showing that the alleged

deceptive act or practice "has a broader impact on consumers at large or similarly situated

consumers." *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 491 (S.D.N.Y. 2008)

(citation and internal quotation marks omitted). In addition to establishing that the acts were

directed at consumers, the plaintiff must "show that defendant is engaging in an act or practice

that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego,* 623 N.Y.S.2d at 532 (citation omitted). New York courts employ "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego,* 623 N.Y.S.2d at 533.

As to the consumer-oriented prong, Defendants argue that the alleged misleading or deceptive practices occurred within the context of private settlement agreements, which fall outside the scope of the statute. *See id.* ("Private contract disputes, unique to the parties, for example would not fall within the ambit of the statute.") (citation omitted). While it is true that Defendants entered into private settlement agreements with Plaintiffs, Defendants sought attorney's fees and costs in accordance to their established practice and policies. As the payoff quotes essentially governed the settlement negotiations, all defendants in foreclosure actions involving City Tax Liens would be subject to the same overriding policy. Defendants' acts therefore arguably had a "broader impact" on the public, however, it cannot be said that the challenged conduct affected *consumers*.

GBL § 349 is clearly a consumer protection statute, as it falls under a section titled "Consumer Protection from Deceptive Acts and Practices." Under New York law, "the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'" *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 106 (1st Dep't 2000) (citing various state statutes). Courts have defined "consumer" for purposes of GBL § 349 accordingly. *See Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004) ("The New York

courts have also suggested that a consumer, for § 349 purposes, is one "who purchase[s] goods and services for personal, family or household use." (citing *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)).  Indeed, the Southern District of New York declared in *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743 (S.D.N.Y. 1984) that the "typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising."  *Id.* at 751.

Here, Plaintiffs do not address the "consumer" aspect of the GBL § 349, but instead focus on the broader impact of charging purportedly illegal fees to "thousands of New York City homeowners who owed water and sewer charges."  (Pls.' Mem. at 42.)  The challenged practices here do not concern consumer transactions as contemplated by the law.  Instead, Plaintiffs challenge allegedly improper attorney's fees and costs that they paid in the context of settlement, removing the issue from the market place into the courtroom.  Plaintiffs have therefore failed to establish that they were "consumers" within the meaning of GBL § 349.

Even if they were found to have satisfied the "consumer-oriented" element, Plaintiffs have failed to establish that Defendants engaged in "deceptive acts or practices" as required by the statute.  Without citing to authority, Plaintiffs challenge the sufficiency of Defendants' disclosures of attorney's fees and costs in the payoff quotes, arguing that Defendants only summarily identified the amounts as "legal fees and costs (estimated)," without any itemization. Plaintiffs further argue that Defendants failed to disclose that they sought to collect legal fees and expenses that were not authorized by their retainer agreements with outside counsel.

As Plaintiffs acknowledge, Defendants did in fact disclose that they were collecting legal fees and costs separate and apart from the Tax Lien balance.  Defendants clearly identified the

costs as "estimated," and included an explanatory paragraph of the legal fees and costs. Specifically, the payoff quotes read in relevant part: "If a foreclosure has already been commenced, an estimate of legal fees and costs is included below. Actual legal fees and costs may be different than the estimate."

As such, no reasonable trier of fact could find that Defendants engaged in practices or acts that were deceptive or materially misleading, as Defendants disclosed the amount due for legal fees and costs, and identified the same as only an estimate that may be different than the actual amount. A reasonable consumer acting reasonably under the circumstances would understand that the amount disclosed represented an estimated value subject to change. Inasmuch as Plaintiffs claim that Defendants omitted that the estimated legal fees and costs exceed the amounts authorized by Defendants' retainer agreement with outside counsel, I find such argument without merit.

In light of the foregoing, I respectfully recommend that Defendants' motions for summary judgment on Plaintiffs' GBL § 349 claims be granted.

C.     Defendants Are Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claims

Plaintiffs allege that Defendants breached the agreements entered into between JER and Plaintiffs, or JER and outside counsel, by collecting fees, costs, and interest in excess of that authorized by the same. (Second Am. Compl. ¶171.) Beyond the complaint, Plaintiffs have not alleged, much less argued in their opposition, that they were party to any contract between Defendants and outside counsel, and the record does not substantiate such a claim. *See, e.g.*, *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (2d Dep't 2010) (identifying the existence of a contract as an essential element of a breach of contract claim (citations omitted));

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00-CV-5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006) ("As a general rule, absent status as an intended third-party beneficiary, one may sue on a contract only if one is a party to that contract.") (citing 3 Farnsworth, Farnsworth on Contracts §10.1 (2d ed. 2001)).

> 1. *Defendants Are Entitled to Summary Judgment on Boyd's Breach of Contract Claim as to the Forbearance Agreement.*

Boyd brings a breach of contract claim premised on the Forbearance Agreement between Boyd's late husband, Thomas Boyd, and the 1998-1 Trust. As an initial matter, and contrary to Defendants' assertions, Boyd has standing to enforce the terms of the Forbearance Agreement as a third party beneficiary of the contract. "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling,* 95 N.Y.2d at 434-35 (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336 (1983)). Here, the evidence reflects that the property upon which the Tax Lien accrued was jointly owned by Plaintiff Boyd and her late husband, Thomas. (*See* Boyd Indenture; Boyd Title Report.) Pursuant to the Forbearance Agreement, Thomas Boyd agreed to a monthly plan for the payment of the amount owned on the Tax Lien to prevent foreclosure on this jointly held property. Thus, even if Plaintiff Boyd was not an original party to the Forbearance Agreement, it was undeniably intended for her benefit, as it prevented foreclosure on her property. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, Inc., 66 N.Y.2d 38, 44 (1985) ("Essential to status as an intended beneficiary . . . is . . . that 'performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary' or that 'the

30

circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" (quoting RESTATEMENT (SECOND) OF CONTRACTS §302 (1981)).

Although Boyd has demonstrated standing, she has failed to establish a breach of the Forbearance Agreement. The contract expressly contemplates that

> [f]ees and costs of collection may have been incurred if the Tax Lien was referred for foreclosure and such fees and costs of collection, including but not limited to, attorney's fees, title search fees, process server expenses, court filing costs and publication expenses (the "Fees and Costs of Collection"), if any, are owed by the Taxpayer to the Trusts.

After having recognized as such, the parties agreed that "[p]ayment including the initial lump sum payment shall be applied first to the payment of Fees and Costs of Collection *as incurred and actually paid through JER* (emphasis added)." Here, Plaintiffs do not allege that Defendants themselves collected fees and costs not "incurred and actually paid through JER" in violation of the contract.[17] Indeed, in challenging the propriety of the charges, Plaintiffs rely heavily on the invoices and billing records outside counsel submitted to JER – evidence of expenses that were actually incurred by Defendants. Regardless of the propriety of outside counsel's billing practices, Defendants charged Plaintiffs for fees and costs actually incurred by them. As such, no breach occurred.

Accordingly, as Boyd has failed to establish that Defendants breached the terms of the Forbearance Agreement, and the other Plaintiffs have failed to offer any evidence of the existence of a contract, I respectfully recommend that Your Honor grant Defendants' motions for summary judgment on all of the Plaintiffs' breach of contract claims.

---

[17] In response to Defendants' claim that it is "beyond dispute that defendants did not retain the fees and costs at issue," (JER Mem. at 27), Plaintiffs complain that Defendants "cite to no evidence to support this completely inadmissible hearsay assertion." (Pls.' Mem. at 43.) As far as I am aware, Plaintiffs have not alleged much less plead that Defendants fraudulently retained monies collected from Plaintiffs. I do not interpret Plaintiffs' statement here as such an allegation.

D.    Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
      Claims for Restitution Under the Theory of Unjust Enrichment

Defendants argue that Plaintiffs have failed to establish that they are entitled to restitution under the theory of unjust enrichment. "To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution." *Whitman Realty Group, Inc. v. Galano*, 838 N.Y.S.2d 585, 587 (2007) (citing *Kaye v. Grossman*, 202 F.3d 611, 615–16 (2d Cir 2000)). "The essence of such a claim is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d at 616 (citation and quotation marks omitted).

Here, Defendants argue unpersuasively that they were not enriched because they did not retain the disputed fees and costs, but instead used the monies to satisfy the invoices of outside counsel who actually prosecuted the foreclosure actions. (*See* Aff. of John Chilson dated 06/02/11 (Dkt. No. 228) ("Chilson Aff."), at ¶ 59.) Defendants nonetheless retained the benefit of having satisfied that debt to outside counsel. "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit where his debt is satisfied or where he is saved expense or loss." *Blue Cross of Cent. New York, Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983) (citing RESTATEMENT (FIRST) OF RESTITUTION §1 (1937)). As Defendants were spared an expense they would have otherwise incurred, they were enriched.

Assuming *arguendo* that they were enriched, Defendants argue that they were not enriched *at Plaintiffs' expense*. Relying on *Clark v. Darby*, 751 N.Y.S.2d 622 (3d Dep't 2002), Defendants argue that Plaintiffs themselves benefitted from the foreclosure settlements, and as such, Plaintiffs cannot show that Defendants benefitted at their expense. *Id.* at 624 ("Notably, it is the plaintiff's burden to demonstrate that services were performed *for the defendant* resulting

in [the latter's] unjust enrichment . . . .") (citation and quotation marks omitted; emphasis in original).  In *Clark*, the plaintiffs had brought a foreclosure action against defendant's property. During the pendency of the litigation, plaintiffs redeemed the property from an impending sale. The court rejected plaintiffs' claim for restitution under the theory of unjust enrichment, reasoning that

> [a]lthough there can be no question that plaintiffs' payment of real property taxes on the property worked to defendant's benefit by relieving him of that burden, it is equally clear that plaintiff's operated under no mistake of fact but, rather, their sole motivation in making the payment was to protect their own interests . . . .

*Id.* at 633.

The Court finds *Clark* to be distinguishable, but only to a degree.  Inasmuch as Plaintiffs can prove that Defendants recouped from them costs for services billed by outside counsel but not actually performed (as opposed to costs billed in excess of the retainer agreements), Plaintiffs can show that they operated under a mistake of fact to the benefit of Defendants, who in turn used those monies to pay the debt owed to their vendors.  "The principle that a party who pays money, under a mistake of fact, to one who is not entitled to it should, in equity and good conscience, be permitted to recover it back . . . ."  *Island Fed. Credit Union v. Smith*, 875 N.Y.S.2d 198, 200 (2d Dep't 2009) (quoting *Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (1st Dep't 1990)).

Specifically, a reasonable trier of fact could conclude that Plaintiffs paid monies to the outside counsel – through JER – to which outside counsel were not entitled.  For example, Plaintiffs argue that Defendants charged Warters two separate legal fees for "Publication," (*see* Grobman Decl., Exh. DDD), when the docket sheet and billing records indicate that counsel prepared and filed only one order of publication, (*see id.*, Exhs. XX ("Docket Sheet"), EEE

("Billing Records"). Similarly, Plaintiffs allege that Defendants charged Taylor a $45.00 motion filing fee and a $95.00 RJI fee, when the docket sheet indicates that neither filing had occurred. (*Compare id.*, Exh. UUU ("Taylor Disbursement Summary), at JER2 7063 *with* Exh. HHH ("Taylor Docket sheet").) Plaintiffs additionally claim that the billing record as to the Jones foreclosure action contains an internal inconsistency, as counsel logged 6.60 hours work but billed Defendants $1350, which is the equivalent of 7.14 hours. (*Compare id.*, Exh. U ("Jones Billing Record"), at $1350, which is the equivalent of 7.14 hours. (*Compare id.*, Exh. U ("Jones Billing Record"), at JER2 07035 *with* Exh. O ("Jones Recoverable Legal Costs").) Finally, Plaintiffs claim that Defendants collected from Boyd a $255 legal fee for "Judgment Granted," (*see id.*, Exh. PP ("Boyd Itemized Costs")), whereas the corresponding docket sheet does not indicate that judgment was entered (*id.*, Exh. NN.) While an invoice from outside counsel reflects a $255 charge to "prepare, send and file notice of discontinuance," (*id.*, Exh. QQ, at JER2 15319), the record provides no evidence of the hours spent in preparation of the same. In light of such evidence, a reasonable trier of fact could infer that Plaintiffs paid expenses for services that did not in fact occur.

Moreover, Plaintiffs, and arguably Defendants, paid for these expenses under the mistaken belief that the costs were legitimately incurred. As distinguished from Plaintiffs' claim that outside counsel charged them in excess of relevant agreements, in instances where the underlying services was never rendered, outside counsel have absolutely no claim for such costs. In other words, although Plaintiffs might dispute the value of the legal services actually performed and the reasonableness of the costs, such expenses were in fact incurred, albeit at a rate Plaintiffs now disapprove. To the extent the evidence proves that outside counsel charged

for services not rendered or for costs not incurred, however, there is no basis for Defendants to collect such expenses.

While Defendants might argue that they nonetheless paid these costs to outside counsel, however improper, such an argument is unavailing given the overlying principles of equity and good conscience that underpin the theory of unjust enrichment. As an equitable remedy, unjust enrichment "takes into account other considerations which may affect the availability of the remedy." *Mfr. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d at 708. Here, Plaintiffs never had contact with outside counsel, but dealt only through JER. Plaintiffs paid monies to JER with the understanding that those fees and costs were in fact borne by Defendants. To the contrary, Plaintiffs cite to evidence in the record from which a reasonable fact finder could conclude that Defendants collected expenses not in fact incurred by outside counsel. If such allegations prove to be true, Defendants would have been unjustly enriched at Plaintiffs' expense, as they satisfied their debt owed to outside counsel for these improper expenses.

Thus, I respectfully recommend that Your Honor deny Defendants' motion for summary judgment as to Plaintiffs' claims of unjust enrichment.

E.     The Doctrines of Preclusion, Estoppel, And Voluntary Payment Do Not Bar Plaintiffs' Claim for Recovery Under the Theory of Unjust Enrichment

Defendants argue that Plaintiffs' state law claims are barred by the doctrines of res judicata, estoppel, and voluntary payments because Plaintiffs received the benefit of the settlement by not having the Tax Liens foreclosed. New York courts have held that the doctrines of collateral estoppel and res judicata are inapplicable to cases disposed of by stipulation of settlement "[b]ecause no order or final judgment was ever entered dismissing the prior action . . . ." *Gallo v. Teplitz Tri-State Recycling,* 678 N.Y.S.2d 140, 142  (2d Dep't 1998) (citing

*Berkshire Nursing Center v. Len Realty Co.*, 562 N.Y.S.2d 716, 717 (2d Dep't 1990); *Dunleavy v. First Am. Tit. Ins. Co. of N.Y.*, 499 N.Y.S.2d 264 (3d Cir. 1986); *Ott v. Barash*, 491 N.Y.S.2d 661, 668 (2d Dep't 1985); *Peterson v. Forkey*, 376 N.Y.S.2d 560, 561-62 (1st Dep't 1975)).  In *Peterson*, the court reasoned the "[t]he settlement of the previous case prior to the entry of judgment operated to finalize the action without regard to the validity of the original claim, and the action was accordingly considered, in contemplation of law, as if it had never been begun." *Id.,* 376 N.Y.S.2d at 562 (citation omitted).  Here, the prior foreclosure actions were terminated by a settlement and discontinuance, and as such, the prerequisite of a final judgment has not been met.  Thus, these doctrines have no preclusive effect on Plaintiffs' state law claims.  *See Ott v. Barash*, 491 N.Y.S.2d at 669 ("It is evident that a general prerequisite to invocation of either res judicata or collateral estoppel is the existence of a final judgment, i.e., a final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding.") (citations omitted).

Nor does the doctrine of voluntary payment, which "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law," prevent Plaintiffs from seeking recovery under the theory of unjust enrichment.  *Dillon v U-A Columbia Cablevision of Westchester*, 100 N.Y.2d 525, 526 (2003). Simply put, a reasonable trier of fact could conclude that Plaintiffs did not have full knowledge of the fact that a portion of the monies Defendants' collected from them consisted of costs billed by outside counsel for services not in fact performed.

In light of the foregoing, I respectfully recommend that Your Honor find that the doctrines of res judicata, estoppel, and voluntary doctrine do not bar Plaintiffs from seeking restitution under the theory of unjust enrichment.

**IV.     The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs'
         State Law Claims**

If Plaintiffs' FDCPA claims are dismissed, I recommend that Your Honor decline to

exercise supplemental jurisdiction over any remaining state law claims.  Pursuant to 28 U.S.C.

1367(c)(3), district courts may decline to exercise supplemental jurisdiction when the court has

"dismissed all claims over which it has original jurisdiction."  In deciding whether to exercise

supplemental jurisdiction over a matter, " a federal court should consider and weigh in each case,

and at every stage of the litigation, the values of judicial economy, convenience, fairness, and

comity . . . . "  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The Supreme Court

has advised that "in the usual case in which all federal-law claims are eliminated before trial, the

balance of factors . . . will point toward declining to exercise jurisdiction over the remaining

state-law claims."  *Id*. at 350 n.7.  In that regard, the Second Court has recognized that "federal

courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction

when federal claims in a case can be disposed of by summary judgment . . . . "  *Walker v. Time

Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citation omitted.)  While acknowledging its

involved history as a federal action, and Your Honors' familiarity with the facts and the record

given the extensive litigation in this case, neither party has raised "exceptional circumstances" to

warrant retention of federal jurisdiction.

Thus, I respectfully recommend that, in the event Plaintiff Jones' and Boyd's FDCPA

claims are dismissed, Your Honor decline to exercise jurisdiction over Plaintiffs' remaining state

law claims.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor grant 1998-1 Trust and JER Defendants' motions for summary judgment as to Plaintiffs Jones' and Boyd's FDCPA claims, as well as the GBL § 349 and breach of contract claims brought by all of the Plaintiffs against all of the Defendants. Additionally, I recommend that Your Honor deny Defendants' motions for summary judgment as to Plaintiffs' claims for restitution under the theory of unjust enrichment. Finally, I recommend that Your Honor decline to exercise jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. §1367(c)(3).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Kiyo A. Matsumoto within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: August 27, 2012**
      **Brooklyn, New York**

*Ramon E. Reyes, Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**