UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

JOAN GRANT BOYD, *ET AL.*,                    **NOT FOR PUBLICATION**

        Plaintiffs,                    **MEMORANDUM AND ORDER**

  -against-                             05-CV-2455 (KAM)(RER)

J.E. ROBERT CO., *ET AL.*,

        Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

      Plaintiffs Joan Grant Boyd, Randa Jones, Sybil Taylor, and Tonya Warters (collectively, "Plaintiffs") commenced this action on behalf of themselves and a putative class of others similarly situated against Defendants J.E. Robert Co., Inc. and JER Revenue Services, LLC (collectively, the "JER Defendants" or "JER"), and NYCTL 1996-1 Trust, NYCTL 1997-1 Trust, NYCTL 1998-1 Trust, and NYCTL 1999-1 Trust (collectively, the "Trust Defendants"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and New York statutory and common law.  On June 3, 2011, the JER Defendants and Trust Defendants each filed a motion for summary judgment, and the court referred those motions to Magistrate Judge Ramon E. Reyes. (*See* Order dated 2/13/12.)

      On August 27, 2012, Judge Reyes issued a Report and Recommendation, recommending that Defendants' motions for

summary judgment be granted in part and denied in part. (ECF No. 241, Report and Recommendation dated 8/27/12 ("R&R") at 1.)  The JER Defendants, Trust Defendants, and Plaintiffs each filed timely objections to the R&R and subsequently submitted responses to each other's objections. (*See* ECF No. 243, JER Defendants' Objections to R&R ("JER Obj."); ECF No. 244, Trust Defendants' Objections to R&R ("Trust Obj."); ECF No. 245, Plaintiffs' Objections to R&R ("Pls. Obj."); ECF No. 247, Plaintiffs' Response to Defendants' Objections ("Pls. Resp. to Obj."); ECF No. 248, Trust Defendants' Response to Pls. Obj. ("Trust Resp. to Pls. Obj."); ECF No. 249, JER Defendants' Response to Pls. Obj. ("JER Resp. to Pls. Obj.").)  By Order dated October 2, 2012, the court sustained Defendants' objections to Judge Reyes' R&R, adopted in part and modified in part the R&R, granted Defendants' respective motions for summary judgment, dismissed Plaintiffs' FDCPA claims, and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. (ECF No. 250, Order Adopting in Part and Modifying in Part R&R ("10/2/12 Order").)

Presently before the court is Plaintiffs' fully-briefed motion for reconsideration pursuant to Local Civil Rule

6.3.[1] (ECF No. 252, Plaintiffs' Motion for Reconsideration dated 10/17/12 ("Pls. Mot. for Recon."); ECF No. 257, JER Defendants' Opposition to Pls. Mot. for Recon. ("JER Opp."); ECF No. 258, Trust Defendants' Opposition to Pls. Mot. for Recon. ("Trust Opp."); ECF No. 259, Plaintiffs' Reply ("Pls. Reply."); ECF No. 262, Plaintiffs' Letter Providing Supplemental Authority ("Pls. Ltr.").)  For the reasons set forth below, Plaintiffs' motion for reconsideration is denied.

## BACKGROUND

The court foregoes a recitation of the extensive procedural history and facts of this case, which have been set forth previously in Judge Reyes' R&R, this court's Order adopting in part and modifying in part Judge Reyes' R&R, and this court's prior Order on Defendants' motion to dismiss. (10/2/12 Order at 3-23; R&R at 2-7; ECF No. 191, Order Adopting Report and Recommendation dated 2/2/11 ("2/2/11 Order").)

## STANDARD OF REVIEW

"Under Local Civil Rule 6.3, the standard for a motion for reconsideration is 'strict.'" *Norton v. Town of Islip*, No. 04-CV-3079, 2013 WL 84896, at *3 (E.D.N.Y. Jan. 7, 2013) (citing

---

[1] On November 2, 2012, Plaintiffs timely filed a Notice of Appeal of the court's October 2, 2012 Order.  (ECF No. 254, Notice of Appeal dated 11/2/12.)  On February 27, 2013, the Second Circuit granted Plaintiffs' motion to hold the appeal in abeyance pending determination of the instant motion for reconsideration.  (ECF No. 260, Order of Second Circuit granting Motion to Hold Appeal in Abeyance.)

*Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "A motion for reconsideration may be granted only if a court overlooked (1) factual matters that were put before it on the underlying motion or (2) controlling legal authority." *Rollins v. N.Y. State Div. of Parole*, No. 03-CV-5952, 2007 WL 539158, at *2 (E.D.N.Y. Feb. 16, 2007); *see also Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). "A motion for reconsideration is 'not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion.'" *WestLB AG v. BAC Fla. Bank,* 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)). Indeed, "Local Rule 6.3 generally precludes a movant from 'advancing new facts, issues or arguments not previously presented to the court.'" *Id.* (quoting *United States v. Tillman*, No. 07-CR-1209, 2009 WL 1270301, at *1 (S.D.N.Y. May 6, 2009)). Nor is a motion for reconsideration "a chance for a party to take a 'second bite at

the apple.'" *Id.* (quoting *Rafter v. Liddle*, 288 F. App'x 768,
769 (2d Cir. 2008)).

"It is within the sound discretion of the district
court whether or not to grant a motion for reconsideration."
*Markel Am. Ins. Co. v. Linhart,* No. 11-CV-5094, 2012 WL 5879107,
at *2 (E.D.N.Y. Nov. 16, 2012).  In exercising this discretion,
the court must be mindful that "a motion for reconsideration 'is
not favored and is properly granted only upon a showing of
exceptional circumstances.'"  *Nakshin v. Holder*, 360 F. App'x
192, 193 (2d Cir. 2010) (quoting *Marrero Pichardo v. Ashcroft*,
374 F.3d 46, 55 (2d Cir. 2004)).

<u>**DISCUSSION**</u>

Plaintiffs argue that the court committed clear error
by granting Defendants' respective motions for summary judgment
and therefore request reconsideration of the court's October 2,
2012 Order adopting in part and modifying in part Judge Reyes'
R&R and dismissing Plaintiffs' FDCPA claims (the "October 2012
Order").  (Pls. Mot. for Recon. at 1-2.)  Plaintiffs
specifically maintain that the court erred by (1) finding that
the New York City Tax Liens, which included charges for
municipal water and sewer services, were not "debts" within the
meaning of the FDCPA and (2) determining that Defendants'
efforts to enforce and foreclose on the Tax Liens did not

constitute debt collection activities actionable under the
FDCPA. (*Id.* at 2-23.) Upon review of the relevant case law and
statutory authority, the court finds no clear error in its
October 2012 Order and therefore denies Plaintiffs' motion for
reconsideration, which fails to identify any controlling legal
authority or facts overlooked by the court and instead merely
attempts to relitigate and rehash arguments already considered
and rejected by the court.

I.   **The Court's October 2012 Order**

    A brief review of this court's October 2012 Order is
necessary before addressing the arguments raised in Plaintiffs'
motion for reconsideration.

    First, in its October 2012 Order, this court held that
the Tax Liens on the Jones and Boyd Properties were not debts
subject to the FDCPA because the mandatory tax, water, and sewer
obligations levied on those properties did not arise from the
type of consumer "transaction" contemplated by the FDCPA. (*See*
10/2/12 Order at 29-30 (citing *Beggs v. Rossi*, 145 F.3d 511 (2d
Cir. 1998) (per curiam)).) Specifically, the court reasoned
that, similar to municipal taxes, the municipal water and sewer
charges imposed upon Plaintiffs were levied upon Plaintiffs as
an incident to property ownership and did not arise from a
consensual transaction, where parties negotiate or contract for

consumer services or goods, as contemplated by the FDCPA.  (*Id.* at 28-34 (citing *Beggs*, 145 F.3d at 512; *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998).)  In support of this conclusion, the court explained that Plaintiffs "Jones and Boyd did not negotiate or enter into any contract or agreement with the City with respect to the utility charges" and that the "properties owned by Jones and Boyd were required by the New York City Administrative Code to be connected to City water and sewage mains and supplied with water at rates provided by the City." (*Id.* at 32 (citing N.Y.C. Admin. Code § 27-2024).)

Furthermore, the court determined that because "New York City's 'water and sewer infrastructure is funded by revenue it collects through water and sewer rates' from the City's property owners," the municipal water and sewer charges, like taxes, "are imposed upon New York City property owners to fund a public service: maintenance of the City's water and sewer infrastructure." (*Id.* at 34 (quoting N.Y.C. Environmental Protection, "About DEP Water Rates," http://home.nyc.gov/html /dep/html/water_rates/index.shtml (last visited 9/21/13)).) The court therefore concluded that the relationship between the City and Plaintiffs with respect to the water and sewer charges "resembles more the relationship between taxpayer and taxing

authority than it does the consensual, transactional 'pro tanto exchange' between parties envisaged by the statutory definition of debt." (*Id.* at 34 (citing *Beggs*, 145 F.3d at 512).)

Moreover, the court noted that the municipal statutory scheme further supported the court's conclusion that the water and sewer charges imposed on Plaintiffs were more akin to taxes than consumer debts under the FDCPA. (*Id.* at 34-35.) In particular, the court explained that Section 1045-j(5) of the City's Public Authority Law — which provides that unpaid water and sewer charges shall constitute a lien upon the premises served, which lien "shall bear interest at the same rate as would unpaid taxes" and "may be foreclosed against the lot of building served in the same manner as a lien for such taxes," N.Y. Pub. Auth. Law § 1045-j(5) — strongly reinforces the court's finding that "water and sewer charges are to be treated in the same manner as taxes," under the FDCPA. (10/2/12 Order at 34-35.)

Finally, the court rejected Plaintiffs' contention that the unpaid water charges on the Boyd Property were debts because such charges were metered based on water usage. (*See id.* at 35-36.) In rejecting Plaintiffs' argument, the court reasoned that "[t]hough metered usage arguably may be one factor in determining the nature of a lien, no court has held that it

8

is the determinative factor." (*Id.*)  In addition, the court explained that Plaintiffs proffered no evidence that "Boyd even requested water and sewer services from the City after . . . a negotiation or business dealing or any form of exchange with the City." (*Id.* at 36.)  Instead, the court noted, "Boyd was required to avail herself of City resources and pay concomitant charges for those resources as she used them, irrespective of the method by which the charges were determined by the City." (*Id.*)  Accordingly, the court concluded that the water charges imposed on the Boyd Property, although metered, did not arise from a consensual transaction and therefore do not constitute debts under the FDCPA.  (*Id.* at 36-37 (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997).)

Second, the court alternatively found that Defendants' efforts to enforce and foreclose on the Tax Liens constituted the enforcement of security interests rather than debt collection practices under the FDCPA.  (*Id.* at 42-43.)  In support of this determination, the court cited to authority from several other federal courts finding that the enforcement of a security interest through the foreclosure process is not debt collection under the FDCPA where, as here, no monetary judgment is sought against the debtor in enforcing a lien on property.

(*See id.* at 42-46 (citing cases).)  Finding this precedent persuasive, the court held that "because the judicial foreclosures against the Jones and Boyd Properties did not seek monetary judgments against individual debtors, those foreclosure actions . . . are not debt collection activities under §§ 1692e and 1692f of the FDCPA." (*Id.* at 54.)

After dismissing Plaintiffs' FDCPA claims, the court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and granted Defendants' respective motions for summary judgment. (*Id.* at 54-55.)

## II.  The Tax Liens Are Not "Debts" Under the FDCPA.

In their motion for reconsideration, Plaintiffs first urge the court to abandon its previous determination that the Tax Liens are not debts within the meaning of the FDCPA. (Pls. Mot. for Recon. at 2-14.)  To that end, Plaintiffs contend that the court's previous Order misconstrued controlling authority regarding the meaning of the statutory terms "debt" and "transaction" and, at the very least, incorrectly held that the water charges on the Boyd Property, which were metered based on usage, were not debts under the FDCPA. (*Id.*)  As discussed in further detail below, Plaintiffs' arguments are unavailing and fail to demonstrate any exceptional circumstances warranting reconsideration of this court's October 2012 Order.

Accordingly, as this court previously found, the Tax Liens on the Jones and Boyd Properties are not debts within the meaning of the FDCPA.

### A.   Controlling Second Circuit Authority

Plaintiffs claim that the court's October 2012 Order "fundamentally misconstrues" the Second Circuit's per curiam opinion in *Beggs v. Rossi*, 145 F.3d 511 (2d Cir. 1998). (Pls. Mot. for Recon. at 3-9).  Plaintiffs maintain that, contrary to this court's reasoning, *Beggs* does not require a debt to arise from a *consensual* transaction, whereby parties negotiate or contract for consumer-related goods. (*Id.* at 5-6.)  Plaintiffs argue that *Beggs* instead held that a debt is subject to the FDCPA if it "'has arisen as a result of the rendition of a service or purchase of property or other item of value.'" (*Id.* at 4 (quoting *Beggs*, 145 F.3d at 512).)  In Plaintiffs' view, this court ran afoul of the Second Circuit's clear guidance in *Beggs* by requiring that a debt arise from a *consensual* transaction.[2]  (*Id.* at 5-8.)

---

[2]   As further support for their reading of *Beggs* and their concomitant interpretation of the statutory term "transaction," Plaintiffs cite to *Karpova v. Snow*, 402 F. Supp. 2d 459 (S.D.N.Y. 2005), a non-FDCPA case in which the Southern District of New York discussed the meaning of the term "transaction" in the context of Iraqi Sanctions Regulations. (Pls. Mot. for Recon. at 8-9).  The Southern District's interpretation of the regulatory term "transaction" in *Karpova* provides scant guidance in the FDCPA context, and Plaintiffs provide no compelling reason why *Karpova*'s interpretation of "transaction" is persuasive in the consumer protection context.  Plaintiffs' reliance on *Karpova* is therefore unavailing.

Plaintiffs' argument rests on a misguided view of the facts and the law, which "fundamentally misconstrues" and mischaracterizes the Second Circuit's holding in *Beggs*.  In *Beggs*, the Second Circuit, relying upon the Third Circuit's decision in *Staub v. Harris*, held that "'*at a minimum*, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value.'" 145 F.3d at 512 (emphasis added) (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)).  By arguing that *Beggs* "simply requires that the 'debt' arise in connection with 'the rendition of [such] a service or purchase of property" to be subject to the FDCPA, (Pls. Mot. for Recon. at 5 (alteration in original) (quoting *Beggs*, 145 F.3d at 512)), Plaintiffs conveniently disregard the phrase "at a minimum" and consequently misinterpret *Beggs* as setting forth an exhaustive definition of the statutory term "transaction."  Contrary to Plaintiffs' mistaken assertion, *Beggs* did not hold that the FDCPA applies so long as a debt arises out of a rendition of a service or a purchase of a consumer good.  (Pls. Mot. for Recon. at 5-8.)  To the contrary, *Beggs* held that the FDCPA does *not* apply if the purported "debt" does not arise out of a rendition of a service or a purchase of a consumer good.  Stated differently, *Beggs* stands for the simple and unremarkable

proposition that the FDCPA requires, at the very least, the rendition of a service or a purchase of a consumer good.[3]

Applying this principle, the Second Circuit in *Beggs* determined that an automobile tax was not a debt because such automobile taxes were levied "upon the ownership of the vehicle by the citizen," rather than "upon the purchase or registration of the vehicle *per se*," and therefore did not involve a rendition of a service or purchase of a consumer good.  145 F.3d at 512.  In so holding, the *Beggs* court concluded that the "relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages."  *Id.  Beggs* is therefore fully consistent with this court's holding that the statutory definition of debt "contemplates a *consensual* transaction, where parties 'negotiate or contract' for consumer services or goods."  (10/2/12 Order at 30-31 (citing *Turner*, 362 F.3d at 1227).)  Consequently, Plaintiffs' incorrect claim that this court's October 2012 Order misconstrued controlling Second Circuit precedent is respectfully rejected.

---

[3] Notably, in *Staub*, the case which the Second Circuit found dispositive in *Beggs*, the Third Circuit stated that it "need not decide whether 'transaction' as used in the FDCPA always connotes the existence of an underlying contractual relationship." *Staub*, 626 F.2d at 278.  Thus, notwithstanding Plaintiffs' erroneous suggestion to the contrary, *Staub*, and by extension *Beggs,* did not set forth an exhaustive definition of the statutory term "transaction" or preclude this court's holding that the FDCPA contemplates a consensual transaction.

Beyond misinterpreting the Second Circuit's holding in *Beggs*, Plaintiffs also fail to address this court's conclusion that, under New York City's statutory and administrative regime, the municipal water and sewer charges are more analogous to taxes than consumer debts.  (*See* 10/2/12 Order at 32-35.) Plaintiffs do not dispute that the Jones and Boyd properties were required by the New York City Administrative Code to be connected to municipal water and sewage mains and supply their properties with water at rates determined unilaterally by the City.  N.Y.C. Admin. Code § 27-2024; N.Y. Pub. Auth. Law §§ 1045-j(1), (4).  Nor do Plaintiffs dispute that New York City's water and sewer infrastructure "is funded by revenue it collects through water and sewer rates" from City property owners.  "About DEP Water Rates," http://home.nyc.gov/html/dep/html/water_rates/index.shtml (last visited 9/23/13).  Plaintiffs further concede that Section 1045-j(5) of the City's Public Authority Law provides that unpaid sewer and water obligations constitute a lien on the property that "shall bear interest at the same rate as would unpaid taxes" and "may be foreclosed against [the property] in the same manner as a lien for such taxes."  N.Y. Pub. Auth. Law § 1045-j(5).  Finally, in their opposition to summary judgment, Plaintiffs themselves argue that the unpaid water and sewer charges should be treated as taxes

14

and insist that "state laws covering the collection of city
taxes apply to the collection of the payments at issue." (ECF
No. 230, Plaintiffs' Opposition to Defendants' Motions for
Summary Judgment, at 37.)

These undisputed findings — all of which remain
unaddressed in Plaintiffs' motion for reconsideration —
elucidate two key points. First, these findings demonstrate
that the unpaid water and sewer charges did not arise from a
consensual transaction and therefore do not constitute debts
under the FDCPA. (*See* 10/2/10 Order at 32-34.) Second, these
findings amply support the court's ultimate conclusion that,
under *Beggs*, the water and sewer charges are less analogous to
consumer debts and more comparable to taxes and thus fall
outside the protective ambit of the FDCPA. (*Id.* at 34-35.) As
in *Beggs*, the relationship between the City and Plaintiffs in
this case resembles more the "relationship between taxpayer and
taxing authority" than it does the "type of *pro tanto* exchange
which the statutory definition [of debt] envisages." 145 F.3d
at 512. The court is therefore unconvinced that its October
2012 Order misconstrued or overlooked controlling precedent.

Plaintiffs next accuse this court of overlooking out-
of-circuit decisions finding that condominium assessments and
common charges constitute debts within the meaning of the FDCPA.

(Pls. Mot. for Recon. at 7 & n.5 (citing cases).)  These cases do not alter the court's conclusion that the Tax Liens in this case do not qualify as debts under the FDCPA.  As a preliminary matter, these out-of-circuit cases are not controlling precedent and therefore do not warrant granting Plaintiffs' motion for reconsideration.[4]  *Rollins*, 2007 WL 539158, at *2.  In any event, the cases cited by Plaintiffs can be reconciled with this court's reasoning that the water and sewer charges levied mandatorily upon New York City property owners do not constitute debts under the FDCPA.  Indeed, the cases cited by Plaintiffs involved voluntary transactions whereby condominium assessments were imposed upon property owners pursuant to consensual or negotiated agreements between the property owners and the condominium/homeowners associations of which the owners were members: put simply, the condominium assessments were a byproduct of business dealings, and not mandatory charges imposed under municipal law.  *See, e.g.*, *Newman v. Boehm,*

---

[4] Moreover, at least some courts have held that condominium assessments and common charges do *not* constitute debts under the FDCPA.  *See Mediterranean Villas Condo. Ass'n, Inc. v. Moors Master Maint.*, No. 11-23302, 2012 WL 882508, at *4 (S.D. Fla. Mar. 14, 2012) ("Maintenance fees assessments applied to all unit owners for costs of maintenance of common areas are generally not 'debts' within the meaning of the FCDPA."); *Azar v. Hayter*, 874 F. Supp. 1314, 1318-19 (N.D. Fla. 1995), *aff'd* 66 F.3d 342 (11th Cir. 1995); *Bryan v. Clayton*, 698 So.2d 1236, 1237 (Fla. Dist. Ct. App. 1997), *review denied by* 707 So.2d 1123 (Fla. 1998).  The court finds that this split in authority weakens the persuasive force of Plaintiffs' argument that, like condominium assessments, the water and sewer charges here should be treated as debts.

*Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997)
("By paying the purchase price and accepting title to their
home, the Riters became bound by the Declaration of Covenants,
Conditions, and Restrictions of their homeowners association,
which required the payment of regular and special assessments
imposed by the association."). Such negotiated and consensual
transactions are conspicuously absent in the instant case. As
earlier noted, Jones and Boyd were required to utilize municipal
water and sewer services and to pay for such services at rates
determined by the City. And it is undisputed that the municipal
statutory scheme treats unpaid water and sewer charges like
unpaid taxes. N.Y. Pub. Auth. Law § 1045-j(5). Furthermore,
Plaintiffs offer no compelling reason why this court should
treat the municipal water and sewer charges like condominium
assessments. As such, the court is not persuaded by Plaintiffs'
reliance on out-of-circuit cases finding that condominium
assessments, which are factually distinct from the mandatory
statutory municipal sewer and water charges here, constitute
debts under the FDCPA.

        Equally as unpersuasive is Plaintiffs' claim that this
court's October 2012 Order conflicts with the FTC Staff
Commentary relied upon in *Beggs*. (Pls. Mot. for Recon. at 9-
10.) Plaintiffs argue that the FTC Staff Commentary excludes

                                17

unpaid taxes as debts but does not "include water or sewer charges among the obligations that are excluded from the 'debts' subject to the FDCPA." (Pls. Mot. for Recon. at 10.)  Contrary to Plaintiffs' unsubstantiated assumption, the FTC Staff Commentary does not purport to provide an exhaustive list of all obligations excluded from the FDCPA.  Indeed, the Introduction to the FTC Staff Commentary expressly clarifies that the "Commentary should be used in conjunction with the statute . . . and is not intended as a substitute for the statutory text" and that the "Commentary should be not considered as a reflection of all court rulings under the FDCPA."  Federal Trade Commission, "Statements of General Policy or Interpretation," Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988).  Consequently, the absence of "water and sewer charges" from the Staff Commentary's illustrative and non-exhaustive list of exclusions does not necessarily render such municipal utility charges "debts" within the meaning of the FDCPA.  To the contrary, the FTC Staff Commentary reinforces this court's conclusion that the water and sewer charges, which resemble municipal taxes rather than consumer debts, fall outside the purview of the FDCPA. (*See* 10/2/12 Order at 32-35.)

18

**B.   Boyd's Metered Water Usage**

Plaintiffs contend that, at the very least, this court committed clear error by finding that the metered water usage on the Boyd Property did not constitute a debt under the FDCPA. (Pls. Mot. for Recon. at 10-12.)   Plaintiffs specifically take issue with this court's finding that "'no court has held that [metered usage] is the determinative factor'" in resolving whether the water and sewer charges are debts under the FDCPA. (*Id.* at 11 (quoting 10/2/12 Order at 36).)   According to Plaintiffs, the Third Circuit in *Piper* expressly held that a payment obligation arising from metered water usage is a consensual transaction subject to the FDCPA.   (*Id.* at 11-12 (quoting *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 233 n.8 (3d Cir. 2005).)

In *Piper*, the Third Circuit provided the following analysis with respect to the unpaid water service fees in that case:

> It is true, as [defendant] stresses, that a property owner in Pennsylvania may incur an obligation to pay a water service fee even though he has not connected his property to the municipal water system, but that is not the situation before us.  Nor does this fact render erroneous the *Pollice [v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), Court's characterization of normal water/sewer fees in Pennsylvania as arising from a "consensual . . . transaction."   It

> is apparent from the Pipers' account with
> the City that their service was metered in
> the normal fashion and that the amount of
> their obligation to pay was based on the
> amount of water they chose to use.  The
> consensual nature of the transaction
> distinguishes the situation before us from
> tax assessments which *Pollice* held to not be
> debts within the meaning of the FDCPA.

396 F.3d at 233 n.8 (internal citation omitted).  Seizing upon

this language in *Piper*, Plaintiffs argue that the water charges

on the Boyd Property likewise arose from a consensual

transaction because they were metered according to usage.  (Pls.

Mot. for Recon. at 11-12.)5

        In pursuing this argument, however, Plaintiffs ignore

the critical distinction between the municipal scheme in *Piper*

and the municipal water and sewer regime in the City of New

York.  Unlike in *Piper*, Boyd did not, and could not,

"voluntarily elect[] to avail [her]self of municipal water/sewer

services," *Piper*, 396 F.3d at 233 n.8; rather, Boyd was required

to do so by New York City municipal law.  As this court

previously noted in its October 2012 Order, Plaintiffs fail to

demonstrate that the administrative regime for water and sewer

services in the City of Pittsburgh is comparable to the

_____

        5 The court has also received and considered Plaintiffs'
unauthorized letter, dated September 25, 2013, in which Plaintiffs bring to
the court's attention the recent decision, *Reilly v. Northeast Revenue
Servs.*, No. 12-CV-02312, 2013 U.S. Dist. LEXIS 108554 (M.D. Pa. Aug. 1,
2013).

administrative regime in the City of New York.  In fact,
Plaintiffs concede that, unlike in New York City, where the
municipal water board serves as the sole water and sewage
provider, private companies serve the water and sewage needs of
property owners in the City of Pittsburgh and serve as an
alternative to municipal public utilities.  (10/2/12 Order at 40
& n.16 (citing Pennsylvania American Water Company,
http://www.amwater.com/ paaw/about-us/page9704.html (last
visited 9/23/13)).)  This fact lends credence to the court's
determination that water users in *Piper* exercised a level of
consent not present in the instant case.  Plaintiffs therefore
fail to establish any similarity between the "normal water/sewer
fees in Pennsylvania" in *Piper* and the mandatory water and sewer
charges imposed by New York City in this case.[6]

        Finally, to the extent that *Piper* holds that metered
usage alone gives rise to a consensual transaction under the
FDCPA, this court declines to adopt such reasoning where, as
here, property owners have no choice in determining whether or
not to use municipal water services.  Irrespective of whether
Boyd's water charges were metered based on usage, Boyd was

---

        [6] Significantly, Plaintiffs do not contest this court's finding
that the bundled Tax Liens are unique and distinguishable from the municipal
liens in *Pollice* and *Piper*, which, unlike the Tax Liens, were not composed of
mixed obligations bundled into one instrument.  (10/2/12 Order at 40-41.)
This distinction likewise renders *Pollice* and *Piper* inapposite.

required by law to connect her property to municipal water mains and pay for such water at rates determined by the City or face foreclosure of a lien on their properties for unpaid water and sewer charges.  Given these facts, it simply cannot be said that the water charges on the Boyd Property — metered or not — arose from a consensual transaction.

Because Plaintiffs have failed to identify any facts or controlling precedent overlooked by the court in its October 2012 Order, reconsideration is not warranted with respect to the court's finding that the Tax Liens do not constitute debts within the meaning of the FDCPA.

**III. The FDCPA Does Not Apply to the Enforcement of Security Interests Against Property.**

Plaintiffs additionally challenge this court's alternative holding that Defendants' efforts to foreclose on the Tax Liens constituted the enforcement of security interests rather than debt collection practices subject to the FDCPA. (Pls. Mot. for Recon. at 14-19.)  Plaintiffs maintain that unauthorized amounts collected during foreclosure are subject to the FDCPA and argue that this court mistakenly held that "defendant's *actual collection* of the allegedly improper amounts did not constitute the '*collection or attempt to collect a debt*' subject to § 1692(f)(1) because it occurred during a

22

foreclosure." (Pls. Mot. for Recon. at 15.)  In Plaintiffs'
view, the court's decision is at odds with the weight of
decisional authority as well as the position adopted by the
Consumer Financial Protection Bureau ("CFPB") in a recent amicus
brief. (*Id.* (citing cases[7]).)

Plaintiffs' argument is flawed in several respects.
First and foremost, Plaintiffs misrepresent the scope of this
court's holding in the October 2012 Order.  Contrary to
Plaintiffs' broad mischaracterization, this court did not find
that Defendants' actions fell outside of the FDCPA "because [the
challenged collection activities] *occurred during* foreclosure."
(*Id.*) (emphasis added).  Instead, the court held that the
foreclosure actions as to the Tax Liens did not seek monetary
judgments against Plaintiffs and were therefore not debt
collection activities for purposes of the FDCPA, but, rather,
constituted the enforcement of Defendants' security interests in
property. (10/2/12 Order at 42, 54.)  Central to this court's
holding was the undisputed fact that the foreclosure complaints
did not request deficiency judgments against Jones or Boyd and

---

[7] Plaintiffs cite to decisions from numerous federal Courts of
Appeals in support of their argument.  *See, e.g.*, *Glazer v. Chase Home Fin.
LLC*, 704 F.3d 453, 459–64 (6th Cir. 2013); *Wallace v. Washington Mut. Bank,
F.A.*, 683 F.3d 323, 328 (6th Cir. 2012); *Birster v. Am. Home Mortg. Serv.,
Inc.*, 481 F. App'x 579 (11th Cir. 2012); *Reese v. Ellis, Painter, Ratterree &
Adams, LLP*, 678 F.3d 1211, 1217–18 (11th Cir. 2012); *Wilson v. Draper &
Goldberg*, 443 F.3d 373, 376 (4th Cir. 2006); *Kaltenbach v. Richards*, 464 F.3d
524, 527 (5th Cir. 2006); *Piper*, 396 F.3d at 234–35.

instead proceeded solely against the Jones and Boyd Properties, both of which were subject to Tax Liens. (*Id.* at 47-48.)  The court rejects Plaintiffs' attempt to assign error in this court's October 2012 Order by misconstruing the court's holding.

In any case, to the extent that the appellate court cases and the CFPB amicus brief cited by Plaintiffs support the proposition that the enforcement of security interests through lien foreclosure constitutes debt collection,[8] the court declines to follow the misguided reasoning in these non-controlling cases.  As this court previously found, the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA.  In so holding, the court respectfully parts ways with the federal appellate courts that have held to the contrary and instead joins the many federal district courts, including at least one in the Second Circuit, that have determined that foreclosure activities do not constitute debt collection under the FDCPA.  *See, e.g.*, *Proa v. Wells Fargo Bank, N.A.*, No. 13-CV-759, 2013 WL 4508364, at *5

---

[8] JER Defendants persuasively argue that many of appellate cases cited by Plaintiffs do not fully support the proposition that the foreclosures on property liens constitute debt collection activities particularly where, as here, no deficiency judgments have been sought; to that end, JER Defendants provide several reasons why these Circuit Court cases are distinguishable on their facts and, in any event, not controlling. (JER Opp. at 7-8.)  Although the court finds merit in JER Defendants' argument, the court need not distinguish these cases because, as set forth *infra*, the reasoning adopted by these cases is tenuous.

n.2 (S.D. Cal. Aug. 22, 2013) ("[T]he acts Defendants took to
enforce a security interest do not qualify as debt collection
within the scope of § 1692e."); *DeMoss v. Peterson, Fram &
Bergman*, No. 12-CV-2197, 2013 WL 1881058, at *2 (D. Minn. May 6,
2013) ("[T]his court has previously held that foreclosure
activities do not constitute debt collection under the FDCPA.");
*Lara v. Aurora Loan Servs. LLC*, No. 12-CV-904, 2013 WL 1628955,
at *7 (S.D. Cal. Apr. 16, 2013)("[N]umerous district courts,
including several in the Ninth Circuit, have also held that the
activity of foreclosing on [a] property pursuant to a deed of
trust is not collection of a debt within the meaning of the
FDCPA." (internal quotation marks omitted) (alterations in
original)); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp.
2d 311, 325 (D. Conn. 2012) ("[I]t appears that a majority of
courts who have addressed this question have also concluded that
foreclosing on a mortgage does not qualify as debt collection
activity for purposes of the FDCPA."); *Kangas v. Kieffer*, No.
12-CV-8, 2012 WL 1424388, at *5 (D.N.D. Apr. 24, 2012) ("[T]he
Court finds that Kieffer and Gray & Associates are not subject
to the Fair Debt Collection Practices Act in this case because
their foreclosure activities in this particular case do not
constitute debt collection."), *aff'd*, 495 F. App'x 749 (8th Cir.
2012); *Zhang v. Countrywide Home Loans, Inc.*, No. 11-CV-03475,

2012 WL 1245682, at *11 (N.D. Cal. Apr. 13, 2012) ("The question
of whether a foreclosure constitutes debt collection under the
FDCPA has not been decided by the Ninth Circuit, but district
courts throughout the Ninth Circuit have concluded that it does
not." (internal quotation marks omitted)); *Meyer v.
Citimortgage, Inc.*, No. 11-CV-13432, 2012 WL 511995, at *7 (E.D.
Mich. Feb. 16, 2012) ("To the extent plaintiffs' various,
unspecified FDCPA claims concern the enforcement of the
mortgage, these claims fail because the FDCPA are not applicable
to the enforcement of a security interest, because the FDCPA
does not consider foreclosure to be debt collection."); *Bray v.
Bank of Am.*, No. 09-CV-75, 2011 WL 30307, at *7 (D.N.D. Jan. 5,
2011) ("In *Gray,* the district court concluded foreclosure
activities are not debt collection, as contemplated by the Fair
Debt Collection Practices Act."), *appeal dismissed*, 435 F. App'x
571 (8th Cir. 2011) and *aff'd*, 497 F. App'x 685 (8th Cir. 2013);
*Speleos v. BAC Home Loans Serv., L.P.*, 824 F. Supp. 2d 226, 232
(D. Mass. 2011) ("The statute itself, however, distinguishes
debt collection from security interest enforcement in its
definition of a 'debt collector.'"); *Geist v. OneWest Bank*, No.
10-C-1879, 2010 WL 4117504, at *3 (N.D. Cal. Oct. 19, 2010)
("Although the Ninth Circuit has not yet addressed whether a
foreclosure action constitutes 'debt collection' under the

26

FDCPA, district courts throughout the Ninth Circuit have concluded that it does not." (collecting cases)); *Odinma v. Aurora Loan Servs.*, No. 09-C-4674, 2010 WL 2232169, at *11 (N.D. Cal. June 3, 2010) ("[F]oreclosure is not debt collection under the federal Fair Debt Collection Practices Act."); *Aniel v. T.D. Serv. Co.,* No. 10-C-3185, 2010 WL 3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("Plaintiffs' allegations relating to the FDCPA claim relate to foreclosure proceedings and courts throughout this circuit have concluded that foreclosure does not constitute 'debt collection' under the FDCPA."); *Jozinovich v. JP Morgan Chase Bank, N.A.,* No. 09-C-3326, 2010 WL 234895, at * 6 (N.D. Cal. Jan. 14, 2010) ("[T]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." (alterations in original) (internal quotation marks omitted)); *Siegel v. Deutsche Bank Nat'l. Trust Co*., No. 08-CV-517, 2009 WL 3254491, at *4 (D. Neb. Oct. 8, 2009) ("A mortgage foreclosure is not a debt collection activity."), *aff'd*, 409 F. App'x 975 (8th Cir. 2011); *Landayan v. Washington Mut. Bank,* No. 09-C-916, 2009 WL 3047238, at *3 (N.D. Cal. Sept. 18, 2009) ("A claim cannot arise under FDCPA based upon the lender enforcing its security interest under the subject deed of a trust because foreclosing on a mortgage does not constitute an attempt to collect a debt for purposes of the

FDCPA."); *Salazar v. Tr. Corps.*, No. 08-CV-2142, 2009 WL 690185, at *6 (S.D. Cal. Mar. 12, 2009) ("The Court accordingly finds that the foreclosure on plaintiff's home is not the collection of a debt within the meaning of the FDCPA."); *Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("[T]he enforcement of a security interest, including a lien foreclosure, does not constitute the 'collection of any debt.'"); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices."); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."); *cf. Glazer v. Chase Home Fin., LLC*, 704 F.3d 453, 460 (6th Cir. 2013) ("The view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection. This view follows from the premise that the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection." (citing but disagreeing with district court cases)).

In this court's view, the prevailing approach among federal district courts is correct and based upon a proper reading of the FDCPA's statutory language.  The district court in *Gray v. Four Oak Court Association* provides the following analysis to support the conclusion that the enforcement of security interests is distinct from debt collection under the FDCPA:

> The FDCPA does not define "the collection of any debt." However, the statute's definition of a "debt collector" clearly reflects Congress's intent to distinguish between "the collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6). The first sentence of that definition defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The third sentence of § 1692a(6) provides that for purposes of § 1692f(6), a debt collector is also "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." If a party satisfies the first sentence, it is a debt collector for purposes of the entire FDCPA. If a party satisfies only the third sentence, its debt collector status is limited to § 1692f(6). However, if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security

> interests would also have the principal
> purpose of collecting debts. Therefore, to
> avoid this result, the court determines that
> the enforcement of a security interest,
> including a lien foreclosure, does not
> constitute the "collection of any debt."

580 F. Supp. 2d at 887-88 (footnote and citation omitted); *see also Armacost v. HSBC Bank USA*, No. 10-CV-274, 2011 WL 825151, at *5-6 (D. Idaho Feb. 9, 2011) (adopting statutory interpretation of *Gray*), *adopted by* 2011 WL 809166 (D. Idaho Mar. 2, 2011); *Jara v. Aurora Loan Servs., LLC, et al.*, No. 11-C-419, 2011 WL 6217308, at *5 (N.D. Cal. Dec. 14, 2011) (finding statutory interpretation of *Armacost* persuasive).

The court is persuaded by the statutory interpretation set forth in *Gray* and fully adopts its reasoning. As the *Gray* court aptly observed, construing the enforcement of security interests as debt collection under the FDCPA renders superfluous some of the statutory text. 580 F. Supp. 2d at 887-88. "It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: 'It is our duty to give effect, if possible, to every clause and word of a statute.'" *State Street Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also United States v. Aleynikov*, 676 F.3d 71, 81 (2d Cir. 2012) (rejecting interpretation as "inconsistent with

one of the most basic interpretative canons, that a statute
should be construed so that effect is given to all its
provisions, so that no part will be inoperative or superfluous,
void or insignificant" (internal quotation marks omitted)).  The
canon against surplusage therefore militates strongly in favor
of *Gray*'s statutory interpretation.

     The Sixth Circuit recently rejected the interpretive
approach adopted by *Gray*.  *See Glazer*, 704 F.3d at 463–64.
Specifically, the Sixth Circuit explained that the FDCPA does
not "except from debt collection the enforcement of security
interests" but rather "operates to *include* certain persons under
the Act (though for a limited purpose); it does not *exclude* from
the Act's coverage a method commonly used to collect a debt."
*Id*. (citing *Piper*, 396 F.3d at 236).  In reaching this
determination, the *Glazer* court asserted that "[o]ther than
repossession agencies and their agencies, we can think of no
others whose only role in the collection process is the
enforcement of security interests.  A lawyer principally engaged
in mortgage foreclosure does not meet this criteria, for he must
communicate with the debtor regarding the debt during the
foreclosure proceedings."  *Id*. at 464.  Repossession agencies,
the Sixth Circuit reasoned, do not have to communicate with

debtors because they "typically 'enforce' a security interest . . . when the debtor is not present." *Id.*

  *Glazer*'s reasoning is unconvincing and has been rejected elsewhere. *See Natividad v. Wells Fargo Bank, N.A.*, No. 12-CV-3646, 2013 WL 2299601, at *6-7 (N.D. Cal. May 24, 2013) (rejecting the reasoning and analysis of *Glazer*). For example, the district court in *Natividad* has recently identified several of *Glazer*'s flaws:

> Nothing in the [FDCPA] supports *Glazer*'s conclusion that an entity cannot be considered an enforcer of security interests if there are communications between it and the debtor. An entity, such as a trustee, is enforcing a security interest when it pursues nonjudicial foreclosure as much as a repossession agency is enforcing a security interest when it takes possession of a vehicle. That entities pursuing nonjudicial foreclosure must provide statutorily mandated communications to debtors — such as a notice of default — does not automatically deprive them of their role as enforcers of security interests. In addition, *Glazer* appears to assume that the third sentence only includes repossessors, as opposed to also excluding repossessors from the other provisions of the Act. However, under the broad definition of "debt collection" articulated by the [*Glazer*] court, the activities of repossessors, as the activities of persons pursuing mortgage foreclosure, could fall within that definition. After all, [according to the *Glazer* court's own reasoning,] the ultimate goal of repossessing a vehicle is to pay down an outstanding debt — just as the ultimate goal of foreclosing on a mortgage

> is to satisfy the loan amount. Thus, for
> the purpose of determining what actions
> comprise collecting debt, and therefore who
> qualifies as a "debt collector" under the
> Act, the actions of repossessors are not
> distinguishable from the actions of persons
> pursuing mortgage foreclosure.

*Id.* at *7. The FDCPA by its own terms contemplates a distinction between the "collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6). The *Glazer* court overlooks this basic statutory distinction and engages in statutory interpretation that this court declines to follow.[9] *Speleos*, 824 F. Supp. 2d at 232 ("The statute itself, however, distinguishes debt collection from security interest enforcement in its definition of a 'debt collector.'").

The court therefore concludes — as it did in its October 2012 Order — that where, as here, no monetary judgment

---

[9] The *Glazer* court also relies upon 15 U.S.C. § 1692i(a)(1) to support its holding that the enforcement of security interests constitutes debt collection under the FDCPA. 704 F.3d at 462. Section 1692i(a)(1) is a venue provision that requiers a debt collector who brings a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation" to file the action in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). This provision, the *Glazer* court argues, suggests that "filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act." *Id.* This is not so. Although § 1692i is a venue provision that, by its terms, applies to only "debt collectors," the *Glazer* court erroneously assumes that these debt collectors are debt collectors *because* of their mortgage foreclosure activities, rather than because of other activities that qualify as debt collection under the FDCPA. There is nothing in the text of § 1692i to support the *Glazer* court's assumption. *See Natividad*, 2013 WL 2299601, at *8 ("[T]he [*Glazer*] court's conclusion fail[s] to recognize that the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692(a)(6)'s general definition of a debt collector.").

is sought against a debtor, the enforcement of a security interest through lien foreclosure does not constitute debt collection for purposes of the FDCPA.[10]

* * *

At bottom, Plaintiffs' motion for reconsideration is a thinly veiled attempt to obtain a second bite at the apple by relitigating issues already considered by the court.  Even if Plaintiffs' motion raised some meritorious arguments, which it does not, Plaintiffs fail to identify any clear error or controlling precedent or facts overlooked in this court's October 2012 Order.  Having failed to do so, Plaintiffs are not entitled to reconsideration.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for reconsideration is denied.  The parties shall inform the Second Circuit of the disposition of this motion, transmit a

---

[10] Plaintiffs conclude their motion for reconsideration by arguing that the sole inquiry under § 1692f(1) is whether defendants collected unauthorized amounts.  (Pls. Mot. for Recon. at 20-22.)  Plaintiffs thus argue that "the Court's finding that 'defendant's judicial foreclosures did not attempt to collect money from the debtor' is not only irrelevant for purposes of § 1692f(1), but logically inconsistent as well."  (*Id.* at 23.)  This argument misses the mark.  To be liable under § 1692f(1), a debt collector must "collect or attempt to collect [a] debt."  15 U.S.C. § 1692f.  Thus, this court's finding that Defendants' judicial foreclosures did not attempt to collect monetary judgments from Plaintiffs is of central relevance to determining whether Defendants' actions in enforcing the Tax Liens against the Jones and Boyd Properties constitute debt collection activities for purposes of § 1692f(1).  In any event, Plaintiffs have pointed to no controlling legal authority or facts that this court overlooked and therefore are not entitled to reconsideration on this, or any other, issue.

copy of this Memorandum and Order to the Second Circuit, and file an affidavit in this docket confirming such transmittal no later than October 1, 2013.

**SO ORDERED.**

Dated:      September 27, 2013
            Brooklyn, New York

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

35